DAVID E. COMBS, Plaintiff v. CITY ELECTRIC SUPPLY COMPANY, Formerly d/b/a COUNTY ELECTRIC SUPPLY CO., LTD., POINTSETTIA LTD., SEBEK LTD., TIANA LTD., THOLU LTD., KIELEY LTD., KIEBER LTD., ANDREW GREEN & EXPERTA TRUSTEES JERSEY LIMITED, and DARREN SMITH, Defendants

No. COA09-108

(Filed 16 March 2010)

**1. Employer and Employee— wrongful discharge—reporting misconduct to management—evidence sufficient**

The trial court erred by granting defendants' motion for directed verdict on a claim for the wrongful discharge of an at-will employee where the claim was based upon a retaliatory termination after plaintiff reported to management that the company was withholding negative account balance statements from customers, transferring the monies to a separate account, and continuing to invoice customers in violation of N.C.G.S. § 14-100 (obtaining property by false pretenses).

**2. Employer and Employee— tortious interference with contract—termination—wrongful purpose—evidence sufficient**

The trial court erred by granting defendants' motion for directed verdict on a claim for tortious interference with a contract by defendant Smith where plaintiff reported misconduct

within the company to Smith and was later terminated. Plaintiff forecasted more than a scintilla of evidence that he was terminated for a wrongful purpose.

**3. Appeal and Error— preservation of issues—argument not raised**

Plaintiff was deemed to have abandoned an argument on appeal that a corporation ratified the acts of a supervisor in a wrongful termination suit. Plaintiff did not raise the issue in his brief, cite authority, or point to evidence in the record.

**4. Unfair Trade Practices— employment dispute—not an unfair or deceptive trade practice**

The trial court did not err by granting defendants' motion for a directed verdict on plaintiff's claim for unfair and deceptive trade practices after an alleged retaliatory firing. The case involved a simple employment dispute and did not fall within the purview of N.C.G.S. § 75-1.1.

Appeal by plaintiff from judgment entered 20 June 2008 by Judge Franklin F. Lanier in Forsyth County Superior Court. Heard in the Court of Appeals 19 August 2009.

*Kennedy, Kennedy, Kennedy and Kennedy, L.L.P, by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellant.*

*James N. Jorgensen, P.A., by James N. Jorgensen, for defendant-appellees.*

STEELMAN, Judge.

Viewing the evidence in the light most favorable to plaintiff, more than a "scintilla of evidence" was presented tending to show City Electric had obtained money by false pretenses from its customers. Plaintiff's claim for wrongful discharge based upon the reporting of such conduct fell within the public policy exception to the at-will employment doctrine. Plaintiff's evidence pertaining to his tortious interference with a contract claim tends to show that his employment was terminated by his supervisor based upon a wrongful purpose. The trial court improperly granted defendant's motion for directed verdict as to defendant Smith. Because plaintiff failed to make any argument on appeal as to whether sufficient evidence was presented at trial to establish that City Electric ratified Smith's alleged tortious conduct, this issue is deemed abandoned. Where there is a general

**COMBS v. CITY ELEC. SUPPLY CO.**

[203 N.C. App. 75 (2010)]

employee/employer relationship and no evidence of any conduct between plaintiff and City Electric, which would "affect commerce," the Unfair and Deceptive Trade Practices Act is not applicable.

## I. Factual and Procedural Background

From August 2001 until 21 July 2003, David E. Combs (plaintiff) was employed as an accounts receivable manager at City Electric Supply Company (City Electric) in Greensboro, North Carolina. Plaintiff was hired as an at-will employee. Plaintiff oversaw the company's Raleigh Division financial operations and his job duties included allocating the monies received by City Electric to its various customer accounts. Plaintiff also was responsible for preparing a monthly bank reconciliation report with his supervisor. In October 2002, plaintiff was also assigned to submit a monthly payment of North Carolina Sales Tax to the Department of Revenue.

In January 2003, plaintiff's immediate supervisor advised him not to mail month-end statements to customers who had a negative account balance[1]. Plaintiff disagreed with this policy and scheduled a meeting with Darren Smith (Smith), the head supervisor of City Electric's Greensboro office, to discuss this practice. Plaintiff met with Smith on 3 February 2003 and asserted that City Electric was stealing money from its customers. After this meeting, plaintiff believed that he started to be treated differently as an employee and that Smith was "trying to get rid of [him]."

On 28 May 2003, plaintiff received a written job performance review by Smith and received an unsatisfactory rating based upon the following:

—Lack of attention to detail—allocation errors left month after month until the credit manager resolves them.

—Not able to reconcile bank reconciliation with out [sic] the Credit Manager's help. Bank Rec. has only once been reconciled in the time frame allotted. Little or no over-time has been spent to meet this deadline. (Time frame allotted is 3-4 days from receipt of Bank Statement).

---

1. Plaintiff testified that a negative account balance could be attained by "a payment [that] came in before the invoice has hit the system for someone's account. It could be double payments. It could be any number of things. Somebody could have returned merchandise and was due a credit on their account because the merchandise was returned."

—A new rate of pay was offered for over-seeing the payroll department and no acceptance was given to the work when it was presented.

—Unallocated cash is left in large quantities at the end of every month—unallocated cash is the sole responsibility of the AR Manager.

—Incorrect cash sheets have been faxed to every Branch and Group manager, resulting in branch complaints and a general undermining of the accounts departments ability. This error has happened on more than one occasion.

—Discussing your salary with another member of staff excluding the payroll department and myself. Salary is highly confidential and should never be discussed with anybody except the payroll department or myself.

As a result of the unsatisfactory job performance rating, plaintiff's salary was reduced $2,000.00 and he was informed that "[a] drastic improvement must be shown in executing [his] position and duties within a three-month period, or further disciplinarily [sic] action [would] be taken at that time."

On 21 July 2003, plaintiff's employment with City Electric was terminated. During plaintiff's exit interview, Smith informed plaintiff that his termination was based upon his inability to prepare a monthly bank reconciliation report in a timely manner and his failure to submit the sales tax report correctly to the Department of Revenue. On 30 May 2006, plaintiff filed a complaint against defendants alleging wrongful discharge, tortious interference with his contractual rights, and unfair and deceptive trade practices.[2] Plaintiff alleged that his employment was terminated in retaliation for reporting that "Defendant [was] stealing from its customers' accounts" to City Electric's management. Plaintiff prayed for actual, punitive, and treble damages. Defendants filed an answer that denied the material allegations of plaintiff's complaint and asserted thirteen separate defenses. Defendants' answer also contained a motion to dismiss pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. On 21 March 2008, defendants' moved for summary judgment. This motion was

---

2. Yolanda Pritchett, who was also an employee of City Electric from 26 December 2001 to 20 February 2004, was a named plaintiff in the original complaint. Pritchett alleged that she had also been discharged in retaliation for reporting illegal conduct occurring at City Electric. Pritchett voluntarily dismissed her claims against defendants with prejudice on 5 May 2008. Pritchett testified as a witness for plaintiff at trial.

denied, and the trial commenced on 21 April 2008. At the conclusion of plaintiff's evidence, defendants moved for a directed verdict on all of plaintiff's claims. The trial court granted this motion and entered judgment in favor of defendants. Plaintiff appeals.

## II. Standard of Review

We review a trial court's order granting a motion for directed verdict *de novo*. *Howlett v. CSB, LLC*, 164 N.C. App. 715, 718, 596 S.E.2d 899, 902, *disc. review denied*, 359 N.C. 68, 604 S.E.2d 313 (2004). A motion for directed verdict "tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff." *Manganello v. Permastone, Inc.*, 291 N.C. 666, 670, 231 S.E.2d 678, 680 (1977) (citation omitted). "The party moving for . . . a directed verdict, bears a heavy burden under North Carolina law." *Taylor v. Walker*, 320 N.C. 729, 733, 360 S.E.2d 796, 799 (1987). A directed verdict is not properly allowed "unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish." *Manganello*, 291 N.C. at 670, 231 S.E.2d at 680 (quotation and citation omitted). We view the evidence in the light most favorable to the nonmovant, and give the nonmovant the benefit of every reasonable inference arising from the evidence. *Crist v. Crist*, 145 N.C. App. 418, 422, 550 S.E.2d 260, 264 (2001). "If there is more than a scintilla of evidence supporting each element of the nonmovant's case, the motion for directed verdict should be denied." *Snead v. Holloman*, 101 N.C. App. 462, 464, 400 S.E.2d 91, 92 (1991) (citation omitted). We do not weigh the evidence or assess credibility, but take the plaintiff's evidence as true, resolving any doubt in their favor. *Jones v. Robbins*, 190 N.C. App. 405, 408, 660 S.E.2d 118, 120, *disc. review denied*, 362 N.C. 472, 666 S.E.2d 120 (2008).

## III. Wrongful Discharge—Public Policy Exception

[1] In his first argument, plaintiff contends the trial court erred by granting defendants' motion for a directed verdict as to his claim for wrongful discharge. We agree.

It is undisputed that City Electric hired plaintiff as an employee-at-will. "As a general rule, an employee-at-will has no claim for relief for wrongful discharge. Either party to an employment-at-will contract can terminate the contract at will for no reason at all, or for an arbitrary or irrational reason." *Tompkins v. Allen*, 107 N.C. App. 620, 622, 421 S.E.2d 176, 178 (1992) (citations omitted), *disc. review denied*, 333 N.C. 348, 426 S.E.2d 713 (1993). However, our Supreme

Court created a public policy exception to this rule in *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989):

> [W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

*Id.* at 175, 381 S.E.2d at 447 (quoting *Sides v. Duke University*, 74 N.C. App. 331, 342, 328 S.E.2d 818, 826 (1985)). While there is no specific list that enumerates what actions fall within this exception, "wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer's request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy." *Ridenhour v. IBM Corp.*, 132 N.C. App. 563, 568-69, 512 S.E.2d 774, 778 (internal citations omitted), *disc. review denied*, 350 N.C. 595, 537 S.E.2d 481 (1999). These narrow exceptions to the at-will employment doctrine "have been grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or *the enforcement of the law.*" *Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 333-34, 493 S.E.2d 420, 423 (1997) (emphasis added).

Plaintiff argues that he was discharged in retaliation for reporting to its management that City Electric had engaged in illegal and fraudulent activity by "stealing from its customers' accounts" and cited N.C. Gen. Stat. §§ 14-72 (larceny) and 14-100 (obtaining property by false pretenses) as criminal statutes that City Electric violated. We must therefore determine whether plaintiff presented a "scintilla of evidence" supporting his claim that City Electric's conduct violated N.C. Gen. Stat. §§ 14-72 or 14-100 to surmount defendant's motion for directed verdict as to his wrongful discharge claim under the public policy exception.

Because this Court is reviewing a ruling on a motion for a directed verdict, we view the evidence in the light most favorable to plaintiff and take all of his evidence to be true. In support of plaintiff's claim that City Electric was violating N.C. Gen. Stat. §§ 14-72 and 14-100, he offered a compilation of various City Electric documents into the evidence as plaintiff's exhibit 15. Plaintiff's exhibit 15 contains 212 pages of documents. Plaintiff's testimony largely focused upon three customer accounts from the time period of January

through March 2003 as evidence that City Electric was "stealing" from its customers.

The first account belonged to Entertainment and Sports Arena located in Raleigh. In a monthly statement dated 25 January 2003, it showed that Entertainment and Sports Arena had a negative account balance of $-2,585.18 as of 15 April 2002. Since that time, Entertainment and Sports Arena was invoiced in amounts of $94.70, $34.78, $385.20, and $587.43. However, City Electric's "Customer Profile" shows payments had been submitted for those invoices on 30 January 2003, 17 February 2003, and 20 February 2003, leaving the negative account balance undisturbed. There is an entry in the profile on 14 February 2003 labeled "DSC TKN" in the amount of $2,585.19. Plaintiff testified that on that date, City Electric made a $0.01 adjustment to the negative balance, and removed it from Entertainment and Sports Arena's account. In next month's statement, dated 25 February 2003, the $-2,585.18 negative balance was not reflected or applied to the balance due of $318.86.

Plaintiff also introduced into the evidence Defendants' Responses To Plaintiff's Second Request For Admissions. This document shows plaintiff submitted the following request to defendants: "14. Admit that City Electric Supply Co. previously known as County Electric Supply never reimbursed Entertainment Sports Arena for the amount of $2,585.19." Defendants responded: "Admitted that Entertainment Sports Arena never requested and City Electric Supply Company, Inc. never paid the sum of $2,585.19 to Entertainment Sports Arena."

The second account belonged to Turnage Corporation located in Morehead City. In the statement dated 25 January 2003, it showed that Turnage Corporation had a negative account balance of $-1,360.45 as of 2 August 2002. Turnage Corporation was invoiced twenty-three times after 2 August; however, its customer profile shows payments were made for each invoice prior to 25 February 2003. On 14 February 2003, City Electric made a $0.01 adjustment to the negative account balance, and removed it from Turnage Corporation's account.

Subsequent statements on 25 February and 25 March 2003 did not show a $-1,360.45 balance and did not apply it to the amounts due those months. Further, in response to plaintiff's request for admissions, defendants admitted: "that Turnage Corporation never requested and City Electric Supply Company, Inc. never paid the sum of $1,360.46 to Turnage Corporation."

The third account plaintiff focused upon was Wilbur's BBQ & Restaurant, Inc. located in Goldsboro. Wilbur's 25 January statement showed it had obtained a negative account balance in the amount of $-218.95. Plaintiff testified that he had found no statements for this customer for the month of February 2003 and City Electric's customer profile shows no invoice or payment activity from 7 January until 26 February 2003. The customer profile showed that on 14 February 2003 City Electric made an entry labeled "DSC TKN," adjusted the negative balance by $0.01, and removed it from Wilbur's account. A subsequent statement dated 25 March 2003 did not show a balance of $-218.95. As was the case with Entertainment and Sports Arena and Turnage Corporation, defendant admitted that "Wilbur's BBQ & Restaurant never requested and City Electric Supply Company, Inc. never paid the sum of $218.96 to Wilbur's BBQ & Restaurant."

There are also two documents in the record, *i.e.* the cash discount allocation log and cash receipt register, that show the monies paid by each of these customers that resulted in the negative balances were transferred from the customer's account to a City Electric account referenced as a "4020 account." Defendants do not dispute that this transfer occurred. At trial and on appeal, defendants also very candidly admit that they did not send statements to customers with negative balances. Defendants argue that the complained of conduct did not constitute obtaining property by false pretenses or larceny under the General Statutes. We disagree.

The elements of the crime of obtaining property by false pretenses are: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Parker*, 354 N.C. 268, 284, 553 S.E.2d 885, 897 (2001) (quotation omitted), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002); *see also* N.C. Gen. Stat. § 14-100 (2007). The false pretense need not come through spoken words, but instead may be by act or conduct. *Id.* However, "[t]here must be a causal relationship between the representation alleged to have been made and the obtaining of the money or property." *State v. Davis*, 48 N.C. App. 526, 531, 269 S.E.2d 291, 294-95 (1980).

The preceding evidence establishes that City Electric deliberately withheld these customers' negative account balance statements in January 2003. Defendant testified that he was told that the reason for

this practice was "that it wasn't in the interest of the company," and that "[e]thics doesn't [sic] apply in our business transactions." City Electric then sent out statements in February and March, which indicated that each one of these customers owed a balance on their account. At that time, the money previously paid that resulted in the negative balance had been transferred from their customer account into City Electric's "4020 account," and the negative balance was not shown on their subsequent February and March statements. As a result of this false misrepresentation, both Turnage Corporation and Wilbur's BBQ & Restaurant paid each invoice that was submitted to them in these statements for a total of $4,170.83 and $358.56, respectively.

Defendants' contention that there was never a representation that the negative account balance was not available to be applied to outstanding invoices at the customer's request is disingenuous based upon City Electric's active concealment of the negative balance. We hold that taken in the light most favorable to the plaintiff and taking his evidence as true, the evidence presented at trial tended to show that City Electric violated N.C. Gen. Stat. § 14-100 by purposely withholding negative balance statements, transferring these monies to a separate account, and sending out subsequent statements that did not show the negative balance, which induced the customers to pay the amounts for each of the invoices listed therein. Because plaintiff's wrongful discharge claim is based upon being terminated in retaliation for reporting this conduct, his claim falls within the very narrow public policy exception to the at-will employment doctrine. The trial court erred by granting defendants' motion for directed verdict as to this claim. Plaintiff's claim for wrongful discharge is remanded to the trial court for a new trial.

## IV. Tortious Interference with a Contract

**[2]** In his second argument, plaintiff contends that the trial court erred by granting defendants' motion for directed verdict as to his claim of tortious interference with a contract as to defendant Smith. We agree.

To establish a claim of tortious interference with a contract, a plaintiff must show:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4)

and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

*Embree Construction Group v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (quotation omitted). This cause of action has been found to be applicable to an employment contract that was terminable at will. *See, e.g., Smith v. Ford Motor Co.*, 289 N.C. 71, 85, 221 S.E.2d 282, 291 (1976); *Childress v. Abeles*, 240 N.C. 667, 678, 84 S.E.2d 176, 184 (1964); *Lenzer v. Flaherty*, 106 N.C. App. 496, 512, 418 S.E.2d 276, 286, *disc. review, denied*, 332 N.C. 345, 421 S.E.2d 348 (1992).

The only element defendants challenged at trial and on appeal is whether Smith was justified in terminating plaintiff's employment. For claims of tortious interference with a contract, North Carolina makes a distinction between defendants who are "outsiders" and "non-outsiders" to the contract. An outsider is

one who was not a party to the terminated contract and who had no legitimate business interest of his own in the subject matter thereof. Conversely, one who is a non-outsider is one who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter.

*Smith*, 289 N.C. at 87, 221 S.E.2d 292. " '[N]on-outsiders' often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee. . . . The qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." *Lenzer*, 106 N.C. App. at 513, 418 S.E.2d at 286 (citations omitted).

Smith, as the head supervisor of City Electric's Greensboro office, had a legitimate business interest in the subject matter of the contract and is considered a "non-outsider." *See id.* Defendants argue that plaintiff is precluded from bringing this cause of action against Smith as a matter of law based upon this qualified privilege and contend that "the evidence shows that [plaintiff] was terminated for poor performance; not because he allegedly reported 'stealing' to City Electric."

In the light most favorable to plaintiff, the evidence at trial tended to show that on 27 January 2003 plaintiff's immediate supervisor, Tom Cherchuck, told plaintiff not to send out negative account balance statements. Plaintiff stated that he knew of several accounts that had

a "large negative balance" and that these customers were entitled to be informed of this balance. On 3 February 2003, plaintiff met with Smith and requested that City Electric credit these customers' accounts or refund this money. Smith responded "that it wasn't in the interest of the company and if the customer didn't have a good enough accounting office to catch problems, its their fault," and that "[e]thics doesn't [sic] apply in our business transactions." Plaintiff then asserted that City Electric was stealing money from its customers. Smith "became short with [plaintiff] and got busy with his work . . . and ignored [plaintiff], right in the middle of [the] meeting." Plaintiff stated that Smith did not want to discuss these matters further. Plaintiff testified that the work environment at City Electric immediately changed within days after this meeting. Someone started going through plaintiff's desk on a routine basis. Plaintiff was informed by other employees that he was being watched by Smith and that he was on his "hit list." Plaintiff testified that he believed Smith was "trying to get rid of [him]" in retaliation for challenging City Electric's practice of not sending out negative account balance statements and asserting that City Electric was stealing from its customers.

Plaintiff also testified that the written job performance review "was a complete lie" and that none of the unsatisfactory points contained therein had any factual basis. Plaintiff testified that he had never received any complaints about his work performance until after the 3 February 2003 meeting with Smith.

Plaintiff's testimony was buttressed by two witnesses: Yolanda Pritchett (Pritchett) and Joyce Robin Shown (Shown), employees of City Electric at the time plaintiff was employed. Pritchett testified that plaintiff was "a very professional employee, very timely, trustworthy, and well-liked." Pritchett noticed that in approximately February 2003, other employees stopped inviting plaintiff to eat lunch with them and that Smith "began to watch him from down the hall." Pritchett also testified that she had observed Smith looking through plaintiff's desk and his paperwork. Pritchett was told by another employee that plaintiff was on the managers' "hit list." Shown's testimony mirrored Pritchett's testimony in that she stated plaintiff was professional and hard-working, and that she had also been told that plaintiff was on the managers' "hit list." Neither Pritchett nor Shown articulated the reason plaintiff was on this alleged "hit list."

Plaintiff has forecasted "more than a scintilla of evidence" in support of his allegation that he was terminated for a wrongful purpose,

which would defeat a non-outsider's qualified privilege to interfere with his contract. *See Barker v. Kimberly-Clark Corp.*, 136 N.C. App. 455, 463, 524 S.E.2d 821, 826-27 (2000) (reversing summary judgment and holding the plaintiff's evidence was sufficient to defeat a non-outsider's qualified privilege on the basis that her managers: (1) "out of personal hostility and ill-will toward the [p]laintiff, schemed to come up with false and defamatory accusations against the [p]laintiff with the intent to bring about the termination of her employment[;]" (2) one defendant had a "hit list" with names of employees he intended to "get rid of" and the plaintiff's name was on the list; and (3) when the plaintiff confronted the defendant he admitted his desire to terminate her employment). Because the other elements of tortious interference with a contract were not challenged, we do not address them. The trial court erred by granting defendants' motion for directed verdict as to this cause of action. We reverse the trial court's order and remand for a new trial on plaintiff's tortious interference with a contract claim against Smith.

**[3]** Plaintiff alleged in his complaint and argued before the trial court that City Electric was liable for Smith's tortious conduct based upon the doctrine of ratification. However, plaintiff failed to raise this issue in his appellate brief, cite any authority supporting this theory, or point to any evidence in the record that would establish that City Electric had ratified Smith's conduct. Because plaintiff failed to make this argument on appeal, it is deemed abandoned. N.C.R. App. P. 28(b)(6).

### V. Unfair and Deceptive Trade Practices

**[4]** In his third argument, plaintiff contends that the trial court erred by granting defendants' motion for directed verdict as to his claim of unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1. We disagree.

In order to establish a *prima facie* claim under N.C. Gen. Stat. § 75-1.1, a plaintiff must be able to show: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citation omitted). North Carolina appellate courts have consistently held that the Unfair and Deceptive Trade Practices Act does not apply to general employer/employee relationships. *See id. at* 656, 548 S.E.2d at 710; *Schlieper v. Johnson*, 195 N.C. App. 257, 268, 672 S.E.2d 548, 555 (2009); *Kinesis Adver., Inc. v. Hill*,

187 N.C. App. 1, 21, 652 S.E.2d 284, 289 (2007), *disc. review denied*, 362 N.C. 177, 658 S.E.2d 485 (2008); *Buie v. Daniel International Corp.*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119-20, *disc. review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982).

Plaintiff cites *Sarah Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (1999) and *Walker v. Sloan*, 137 N.C. App. 387, 529 S.E.2d 236 (2000) in support of the proposition that N.C. Gen. Stat. § 75-1.1 is applicable to the facts of this case. In both *Sarah Lee Corp.* and *Walker*, the Court focused upon conduct that constituted activity "affecting commerce" that occurred between the employer and employee and held that N.C. Gen. Stat. § 75-1.1 was applicable to those cases. *Sarah Lee Corp.*, 351 N.C. at 33, 519 S.E.2d at 312; *Walker*, 137 N.C. App. at 396, 529 S.E.2d at 243. In the instant case, there was no evidence presented before the trial court of any conduct that would constitute activity "affecting commerce" between plaintiff and City Electric. Plaintiff only asserts that he was fired in retaliation for "blowing the whistle" on City Electric's practice of not sending out negative balance statements at the end of each month. Thus, the analyses and holdings in *Sarah Lee Corp.* and *Walker* are inapplicable. This case involves a simple employment dispute and does not fall within the purview of N.C. Gen. Stat. § 75-1.1. *Schlieper, supra.* This contention is without merit.

## VI. Conclusion

Because plaintiff presented more than a "scintilla of evidence" that City Electric had obtained money by false pretenses from its customers, his claim for wrongful discharge based upon the reporting of this conduct fell within the public policy exception to the at-will employment doctrine. The trial court improperly granted defendants' motion for directed verdict as to this claim. This claim is remanded for a new trial.

Because plaintiff presented sufficient evidence that his employment was terminated by Smith based upon some wrongful purpose, the trial court erred by granting defendants' motion for directed verdict on plaintiff's tortious interference with a contract claim as to Smith. Plaintiff failed to argue on appeal that City Electric ratified Smith's alleged tortious conduct, and this issue is deemed abandoned. Plaintiff's claim against Smith, individually, is remanded for a new trial.

The Unfair and Deceptive Trade Practices Act is not applicable to a simple employment dispute between an employer and employee.

The trial court properly granted defendants' motion for directed verdict as to plaintiff's unfair and deceptive trade practices claim.

AFFIRMED IN PART; REVERSED IN PART; and REMANDED.

Judges HUNTER, Robert C. and GEER concur.