An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e   P r o c e d u r e .

NO. COA13-680
NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

EDWARD LEE BOMBRIA,
    Plaintiff,

    v.                              Iredell County
                                    No. 11 CV 02751
LOWE'S HOME CENTERS, INC.,
    Defendant.


Appeal by plaintiff from order signed 15 November 2012 by Judge Hugh B. Lewis in Iredell County Superior Court. Heard in the Court of Appeals 4 November 2013.

>    *The Angel Law Firm, PLLC, by Kirk J. Angel, for plaintiff-appellant.*

>    *Womble Carlyle Sandridge & Rice, LLP, by James M. Powell and Jillian M. Benson, for defendant—appellee.*


MARTIN, Chief Judge.


Plaintiff Edward Lee Bombria brought this action alleging that he was wrongfully discharged from his at-will employment with defendant Lowe's Home Centers, Inc. in violation of public policy. He appeals from the trial court's order granting defendant's motion for summary judgment, dismissing his

complaint.  We affirm.

The record before us shows that plaintiff was employed by defendant as a Loss Prevention Manager.  In that capacity, plaintiff was responsible for protecting defendant's customers and property.  At all times relevant to this action, defendant's company policy provided, in relevant part, that, because "[s]ummoning a law enforcement officer and authorizing the prosecution of a customer suspected of theft are serious matters," "in cases of suspected theft," "[i]t is the responsibility of the Store Manager to contact the Regional Loss Prevention Director, Area Loss Prevention Manager (ALPM), Vice President of Loss Prevention or the Legal Department at the CSC before requesting law enforcement assistance in the prosecution of the individual."  The policy further provided that "[f]ailure to obtain appropriate approval in any case may result in disciplinary action up to and including termination of employment."  Plaintiff was aware of the policy.

On or about 4 March 2011, while plaintiff was at work in defendant's Statesville, North Carolina, store location, he began monitoring a customer who was acting "suspicious[ly]" on the store's closed circuit television system.  When the customer and his companion left the store and went out to the parking lot, plaintiff instructed a fellow employee to "use the

surveillance cameras located in the loss prevention office to monitor [the] customer," who then traveled to the Home Depot parking lot located across the street from defendant's store. Plaintiff left defendant's premises and followed the suspect, contacting the 911 operator on at least two occasions to report his locations. Plaintiff did not report to his supervisor that he had been observing the suspect in the Lowe's Statesville store, or that he had reported the suspect to the Statesville Police Department. However, when later questioned by his supervisor, plaintiff indicated that he had received a routine, unsolicited call from the Statesville Police Department asking him to come and identify merchandise that may have been stolen from Lowe's. A few days later, plaintiff's supervisor learned from speaking with a detective at the Statesville Police Department that plaintiff had "initially observed one of the suspects inside of Lowe's Statesville store, followed the individual to a nearby Cracker Barrel restaurant, and that [plaintiff] contacted the police to report the suspicious individual and his location." Only upon further questioning from his supervisor did plaintiff admit that he had "called the police department to report the location of the suspects and their van."

After informing plaintiff that he had violated defendant's

policy that prevents its employees from contacting law enforcement without prior approval, plaintiff was terminated. The record indicates that plaintiff's Employee Performance Report, dated 10 March 2011, described the following as the reasons for plaintiff's termination:

> On March 4, 2011 [plaintiff] fraudulently reported details of his involvement in a Lowe's related apprehension. [Plaintiff] contacted the Statesville PD in regards to the fraudulent use of a credit card at his store without approval or the necessary elements. [Plaintiff] followed the suspects from his store without approval. When questioned about the incident, [plaintiff] falsified the facts and his involvement.

Plaintiff admits that almost one week had passed before he first mentioned to his supervisor that he had contacted the police to report "that there was a suspicious vehicle—suspicious activity that [he] thought they should check out."

_____

"Summary judgment is . . . a device by which a defending party may force the claimant to produce a forecast of claimant's evidence demonstrating that claimant will, at trial, be able to make out at least a *prima facie* case or that he will be able to surmount an affirmative defense." *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E.2d 325, 335 (1981). "[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled

to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). "A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). "[O]n appellate review of an order for summary judgment, the evidence is considered in the light most favorable to the nonmoving party," *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999), and the order is reviewed *de novo*. *See Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004).

"As a general rule, an employee-at-will has no claim for relief for wrongful discharge. Either party to an employment-at-will contract can terminate the contract at will for no reason at all, or for an arbitrary or irrational reason." *Tompkins v. Allen*, 107 N.C. App. 620, 622, 421 S.E.2d 176, 178 (1992) (citation omitted), *disc. review denied*, 333 N.C. 348, 426 S.E.2d 713 (1993). However, "our Courts have recognized an exception to the employment at will doctrine by identifying a cause of action for wrongful discharge in violation of public

policy." *Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 317, 551 S.E.2d 179, 181, *aff'd per curiam*, 354 N.C. 568, 557 S.E.2d 528 (2001); *see also Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) ("[T]here can be no right to terminate [an employment] contract for an unlawful reason or purpose that contravenes public policy[,] . . . [since a] different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent." (internal quotation marks omitted)), *appeal after remand*, 105 N.C. App. 88, 411 S.E.2d 626 (1992).

"Under the exception, the employee has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy." *Considine*, 145 N.C. App. at 317, 551 S.E.2d at 181. "While there is no specific list that enumerates what actions fall within this exception," *Combs v. City Elec. Supply Co.*, 203 N.C. App. 75, 80, 690 S.E.2d 719, 723 (2010), *disc. review denied*, 365 N.C. 190, 706 S.E.2d 492 (2011), "[t]he narrow exceptions to [the employment-at-will doctrine] have been grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law." *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 333-34, 493 S.E.2d 420, 423 (1997), *reh'g denied*,

347 N.C. 586, 502 S.E.2d 594 (1998); *see, e.g.,* *Ridenhour v. Int'l Bus. Machs. Corp.,* 132 N.C. App. 563, 568-69, 512 S.E.2d 774, 778 ("[W]rongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer[']s request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy." (citation omitted)), *disc. review denied,* 350 N.C. 595, 537 S.E.2d 481 (1999). "In order to support a claim for wrongful discharge of an at-will employee, the termination itself must be motivated by an unlawful reason or purpose that is against public policy." *Garner,* 350 N.C. at 572, 515 S.E.2d at 441.

In the present case, plaintiff's complaint "does not allege that defendant's conduct violated any explicit statutory or constitutional provision, nor does it allege defendant encouraged plaintiff to violate any law that might result in potential harm to the public." *See Considine,* 145 N.C. App. at 321, 551 S.E.2d at 184. Rather, plaintiff alleges only that "[e]mployees in North Carolina are legally privileged to report criminal activities[] to law enforcement and discharging an employee for such complaints is contrary to public policy." Further, on appeal, plaintiff directs this Court to *Combs v.*

*City Electric Supply Co.*, 203 N.C. App. 75, 690 S.E.2d 719 (2010), to support his proposition that "an employee's termination based on reporting a suspected crime to law enforcement should fall within the public policy exception to the at-will employment doctrine."

In *Combs*, this Court concluded that the plaintiff's claim fell within the narrowly-drawn public policy exception to the at-will employment doctrine because the plaintiff sufficiently alleged and presented evidence establishing that he was discharged for reporting to his defendant-employer, an electric supply company, that the company was obtaining money by false pretenses by "purposely withholding negative balance statements, transferring these monies to a separate account, and sending out subsequent statements that did not show the negative balance, which induced the customers to pay the amounts for each of the invoices listed therein." *See Combs*, 203 N.C. App. at 79-83, 690 S.E.2d at 723-25. However, in the present case, plaintiff did not allege in his complaint, and does not argue on appeal, that defendant's policy concerning contacting law enforcement is violative of "a specified North Carolina public policy," *see McDonnell v. Tradewind Airlines, Inc.*, 194 N.C. App. 674, 677-78, 670 S.E.2d 302, 305 (internal quotation marks omitted), *disc. review denied*, 363 N.C. 128, 675 S.E.2d 657 (2009), or

that plaintiff was terminated from his position because he observed and reported conduct by defendant that was violative of "a specified North Carolina public policy." *See id.* (internal quotation marks omitted). Therefore, *Combs* is inapposite to the present case.

Instead, the undisputed facts show that, immediately after he instructed a fellow employee to monitor the vehicle of a "suspicious" individual leaving defendant's parking lot, plaintiff left defendant's premises and drove to three different locations, each of which was in close proximity to, and in sight of, the three destinations visited by the same vehicle and suspicious individual that plaintiff had been closely monitoring on closed circuit television in defendant's Statesville store just minutes earlier, and that plaintiff reported the location of the "suspicious" individual to 911 at least twice during this time. Plaintiff also does not dispute that his supervisor completed an employee performance report regarding plaintiff's termination, which described as the reasons for plaintiff's termination—in addition to his failure to comply with defendant's procedures about contacting law enforcement—that plaintiff "fraudulently reported details of his involvement in a Lowe's related apprehension," "followed the suspects from his store without approval," and, "[w]hen questioned about the

incident, [plaintiff] falsified the facts and his involvement." Because "[p]laintiff failed to allege in his complaint a compelling consideration of public policy as expressed in our [S]tate's statutes or constitution that was violated by defendant, or to allege any specific conduct by defendant that violated this same expression of our [S]tate's public policy," *see Considine*, 145 N.C. App. at 321, 551 S.E.2d at 184, and because "[a]ny exception to the at will employment doctrine should be adopted *only* with substantial justification grounded in compelling considerations of public policy," *see id.* (emphasis added) (internal quotation marks omitted), we conclude that an essential element of plaintiff's claim for wrongful termination—namely, that plaintiff's employment with defendant was terminated in violation of a specified North Carolina public policy—is nonexistent. *See Lowe*, 305 N.C. at 369, 289 S.E.2d at 366. Accordingly, we conclude that the trial court did not err when it granted defendant's motion for summary judgment and dismissed plaintiff's complaint. Our disposition on this issue renders it unnecessary to address plaintiff's remaining issues on appeal.

Affirmed.

Judges STEELMAN and DILLON concur.

Report per Rule 30(e).