DAVIS, Judge.
Joseph Gilreath ("Plaintiff") appeals from the trial court's 25 February 2016 order granting the motion to dismiss of Cumberland County Board of Education (the "Board"), Dr. Franklin Till, Jr., and Tonjai Robertson and denying his motion to amend his pleadings. After careful review, we affirm in part, reverse in part, and remand.
Factual and Procedural Background
We have summarized the pertinent facts below using Plaintiff's own statements from his amended complaint, which we treat as true in reviewing the trial court's order granting a motion to dismiss. Feltman v. City of Wilson , 238 N.C. App. 246, 247, 767 S.E.2d 615, 617 (2014).
On 19 July 2012, Plaintiff, a middle school music teacher, was suspended with pay pending an investigation by the Cumberland County School System (the "School System"). On 6 August 2012, Dr. Joseph Locklear, the Associate Superintendent for Human Resources for the School System, sent Plaintiff a letter informing him that the reason for his suspension was "a concern about a demonstrated pattern of inappropriate and unprofessional communication in the workplace with students, parents, and supervisors." The letter also stated that Plaintiff had "failed to comply with the reasonable directives of your supervisors despite warnings and multiple opportunities to do so."
On or about 29 October 2012, Plaintiff received a letter dated 26 October 2012 from Defendant Till, Superintendent of Cumberland County Schools, informing Plaintiff that "I have recommended that you be dismissed on October 16, 2012; and a fourteen day time line [sic] to appeal my recommendation continues to run." The letter stated that Defendant Till's recommendation was for Plaintiff to be suspended with pay. On 31 October 2012, Plaintiff learned, however, that his pay statement from Cumberland County Schools designated his status as "suspended without pay."
On 8 November 2012, Plaintiff received a second letter from Defendant Till. Attached to this letter was a "Resolution" approved by the Board. It stated that the Board had met on 5 November 2012 and had approved Plaintiff's dismissal from employment with the School System. The Resolution also specified the grounds for which Plaintiff was subject to dismissal under N.C. Gen. Stat. § 115C-325(e)(1). The grounds listed were "immorality, insubordination, and neglect of duty."
On 9 November 2012, Plaintiff wrote a letter to Defendant Till requesting that the grounds for the proposed recommendation be reviewed by an impartial hearing officer pursuant to N.C. Gen. Stat. § 115C-325(h)(2). On 16 November 2012, Plaintiff received a letter from Defendant Till stating that Plaintiff had chosen "not to appeal my ... recommendation that you be dismissed" and "I do not have the legal authority to request a hearing officer from DPI as there is no dismissal recommendation to be heard."
On 7 December 2012, Plaintiff filed a petition for judicial review in Cumberland County Superior Court. He amended the petition on 10 December 2012. On 24 June 2013, a hearing on the Board's motion to dismiss Plaintiff's petition was held before the Honorable James G. Bell. On 26 June 2013, the court entered an order (the "26 June 2013 Order") granting the Board's motion to dismiss Plaintiff's petition for judicial review because Plaintiff's "failure to timely respond to the charges against him and assert his defenses and claims in a full evidentiary hearing before a hearing officer or the Board foreclosed the possibility of judicial review of the Board's action."
Plaintiff filed the present action-from which this appeal arises-on 28 October 2015 in Cumberland County Superior Court against the Board, Defendant Till, and Defendant Robertson (collectively "Defendants"). He filed a "First Amended Complaint" on 17 November 2015. In his amended complaint, he alleged (1) claims under 42 U.S.C. § 1983 ; (2) breach of contract; (3) tortious interference with contract; (4) intentional infliction of emotional distress; (5) violation of N.C. Gen. Stat. § 115C-276 ; and (6) violations of the North Carolina Constitution. In his pleadings, he sought injunctive relief, compensatory and punitive damages, and attorneys' fees.
Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and (6) of the North Carolina Rules of Civil Procedure. On 29 January 2016, Plaintiff filed a motion for leave to amend his pleadings in order to file a second amended complaint. A hearing was held before the Honorable Gale M. Adams on 22 February 2016. On 25 February 2016, the trial court entered an order dismissing all of Plaintiff's claims and denying Plaintiff's motion for leave to amend his pleadings. Plaintiff filed a timely notice of appeal.
Analysis
I. Motion to Dismiss
Defendants' motion to dismiss was based on both Rule 12(b)(1) and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. In its 25 February 2016 order granting Defendants' motion to dismiss, the trial court explained its reasoning as follows:
The Court, having reviewed the Complaint and Amended Complaint, both motions, and other materials presented, and having heard arguments of counsel and Plaintiff pro se and considered the applicable law, concludes that all of Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies, and because Plaintiff previously brought a prior action in this Court based on the same set of facts. Accordingly, this Court lacks subject matter jurisdiction over this action and the Motion to Dismiss should be GRANTED. Plaintiff's Motion for Leave to Amend Pleadings is DENIED as futile.
Thus, the trial court's dismissal of this action was based on its belief that it lacked subject matter jurisdiction over this case in its entirety. As discussed below, we conclude that Rule 12(b)(1) barred some-but not all-of Plaintiff's claims.
A. Rule 12(b)(1)
"An action is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies." Johnson v. Univ. of N.C. , 202 N.C. App. 355, 357, 688 S.E.2d 546, 548 (2010) (citation and quotation marks omitted). "Our review of an order granting a Rule 12(b)(1) motion to dismiss is de novo ." Fuller v. Easley , 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001). Because the trial court's dismissal of Plaintiff's claims under Rule 12(b)(1) hinged on its determination that Plaintiff had failed to exhaust his administrative remedies, it is necessary to first examine N.C. Gen. Stat. § 115C-325, which provides a statutory remedy for career teachers who have been dismissed from their employment or suspended.
" Section 115C-325 of our General Statutes sets forth in exhaustive detail the procedures for employing, demoting, and dismissing public school teachers and administrators." James v. Charlotte-Mecklenburg Cty. Bd. of Educ. , 221 N.C. App. 560, 565, 728 S.E.2d 422, 426, disc. review denied , 366 N.C. 409, 734 S.E.2d 868 (2012). N.C. Gen. Stat. § 115C-325(f1) provides for suspension of a career teacher with pay.
(f1) Suspension with Pay. -If a superintendent believes that cause may exist for dismissing or demoting a career employee for any reasons specified in G.S. 115C-325(e)(1), but that additional investigation of the facts is necessary and circumstances are such that the career employee should be removed immediately from his duties, the superintendent may suspend the career employee with pay for a reasonable period of time, not to exceed 90 days. The superintendent shall notify the board of education within two days of his action and shall notify the career employee within two days of the action and the reasons for it. If the superintendent has not initiated dismissal or demotion proceedings against the career employee within the 90-day period, the career employee shall be reinstated to his duties immediately and all records of the suspension with pay shall be removed from the career employee's personnel file at his request. However, if the superintendent and the employee agree to extend the 90-day period, the superintendent may initiate dismissal or demotion proceedings against the career employee at any time during the period of the extension.
N.C. Gen. Stat. § 115C-325(f1) (2015).
N.C. Gen. Stat. § 115C-325(f)(1) authorizes the suspension of a teacher without pay under the following circumstances:
(1) Suspension without Pay. -if a superintendent believes that cause exists for dismissing a career employee for any reason specified in G.S. 115C-325(e)(1) and that immediate suspension of the career employee is necessary, the superintendent may suspend the career employee without pay. Before suspending a career employee without pay, the superintendent shall meet with the career employee and give him written notice of the charges against him, an explanation of the bases for the charges, and an opportunity to respond. Within five days after a suspension under this paragraph, the superintendent shall initiate a dismissal, demotion, or disciplinary suspension without pay as provided in this section. If it is finally determined that no grounds for dismissal, demotion, or disciplinary suspension without pay exist, the career employee shall be reinstated immediately, shall be paid for the period of suspension, and all records of the suspension shall be removed from the career employee's personnel file.
N.C. Gen. Stat. § 115C-325(f)(1).
The statute also provides a dismissal process.
(h) Procedure for Dismissal or Demotion of Career Employee
....
(2) Before recommending to a board the dismissal or demotion of the career employee, the superintendent shall give written notice to the career employee by certified mail or personal delivery of his or her intention to make such recommendation and shall set forth as part of his or her recommendation the grounds upon which he or she believes such dismissal or demotion is justified. The superintendent also shall meet with the career employee and provide written notice of the charges against the career employee, an explanation of the basis for the charges, and an opportunity to respond if the career employee has not done so under G.S. 115C-325(f)(1). The notice shall include a statement to the effect that if the career employee within 14 days after the date of receipt of the notice requests a review, he or she may request to have the grounds for the proposed recommendations of the superintendent reviewed by an impartial hearing officer appointed by the Superintendent of Public Instruction as provided for in G.S. 115C-325(h)(7). A copy of G.S. 115C-325 shall also be sent to the career employee. If the career employee does not request a hearing before a hearing officer within the 14 days provided, the superintendent may submit his or her recommendation to the board.
(3) Within the 14-day period after receipt of the notice, the career employee may file with the superintendent a written request for either (i) a hearing on the grounds for the superintendent's proposed recommendation by a hearing officer or (ii) a hearing within 10 days before the board on the superintendent's recommendation. If the career employee requests an immediate hearing before the board, he or she forfeits his or her right to a hearing by a hearing officer. If no request is made within that period, the superintendent may file his or her recommendation with the board. The board, if it sees fit, may by resolution (i) reject the superintendent's recommendation or (ii) accept or modify the superintendent's recommendation and dismiss, demote, reinstate, or suspend the employee without pay....
N.C. Gen. Stat. § 115C-325(h) (emphasis added).
Finally, the statute sets out a procedure for appeal.
(n) Appeal. -Any career employee who has been dismissed or demoted under G.S. 115C-325(e)(2), or under G.S. 115C-325(j2), or who has been suspended without pay under G.S. 115C-325(a)(4a), or any school administrator whose contract is not renewed in accordance with G.S. 115C-287.1, or any probationary teacher whose contract is not renewed under G.S. 115C-325(m)(2) shall have the right to appeal from the decision of the board to the superior court for the superior court district or set of districts as defined in G.S. 7A-41.1 in which the career employee is employed. This appeal shall be filed within a period of 30 days after notification of the decision of the board. The cost of preparing the transcript shall be determined under G.S. 115C-325(j2)(8) or G.S. 115C-325(j3)(10). A career employee who has been demoted or dismissed ... who has not requested a hearing before the board of education pursuant to this section shall not be entitled to judicial review of the board's action.
N.C. Gen. Stat. § 115C-325(n) (emphasis added).
In the present case, Plaintiff filed a petition for judicial review pursuant to N.C. Gen. Stat. § 115C-325(n) on 7 December 2012. The trial court entered the 26 June 2013 Order dismissing the petition because Plaintiff's failure to take timely action and "assert his defenses and claims in a full evidentiary hearing before a hearing officer or the Board foreclosed the possibility of judicial review of the Board's action." The record is devoid of any indication that Plaintiff ever appealed the 26 June 2013 Order. Therefore, the issue of whether Plaintiff properly availed himself of the statutory remedy available to him under § 115C-325 has been definitively resolved against him.
1. Federal Procedural Due Process Claim
In his amended complaint, Plaintiff has asserted a federal procedural due process violation as one of the bases for his claims under 42 U.S.C. § 1983. " Section 1983 is a vehicle by which ... citizens can sue government officials acting under color of state law for violation of their constitutional rights. Governmental officials sued in their individual capacities ... may be held liable for money damages under section 1983." Andrews v. Crump , 144 N.C. App. 68, 75, 547 S.E.2d 117, 122 (2001) (citation omitted). "To state a claim under 42 U.S.C. § 1983, a plaintiff must show that an individual, acting under color of law, has subjected him to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Copper v. Denlinger , 363 N.C. 784, 789, 688 S.E.2d 426, 429 (2010) (citation, quotation marks, and brackets omitted).
With regard to a procedural due process claim, the United States Supreme Court has held that
[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.
Zinermon v. Burch , 494 U.S. 113, 126, 108 L.Ed. 2d 100, 114 (1990) (emphasis added).
In the present case, we conclude that Plaintiff's federal procedural due process claim was properly dismissed under Rule 12(b)(1). The statutory scheme set out in N.C. Gen. Stat. § 115C-325 provided Plaintiff with all of the procedural due process to which he was constitutionally entitled. The 26 June 2013 Order demonstrates, however, that Plaintiff failed to avail himself of the process afforded to him under the statute. Therefore, his procedural due process claim fails as a matter of law. See Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs. , 174 N.C. App. 266, 273, 620 S.E.2d 873, 880 (2005) (holding that plaintiffs' claim for violation of procedural due process was properly dismissed for lack of jurisdiction for failure to exhaust their administrative remedies).
2. Breach of Contract Claim
In this claim, Plaintiff alleges his dismissal constituted a breach of the Board's contract with him. However, this claim is similarly barred under Rule 12(b)(1) by his failure to avail himself of the statutory remedies provided under N.C. Gen. Stat. § 115C-325.
In Hentz v. Asheville City Bd. of Educ. , 189 N.C. App. 520, 658 S.E.2d 520 (2008), the plaintiff was the mother of two children who had previously been admitted to attend a public school in the Asheville City School District for the 2006-2007 school year. During the school year, the plaintiff was notified by the superintendent of Asheville City Schools that he was recommending to the board of education that the children's discretionary admission to the school be revoked on the grounds that (1) the children lived outside of the district; and (2) one child had violated the student code of conduct. Id. at 521, 658 S.E.2d at 521.
Although the plaintiff could have appealed the superintendent's decision pursuant to N.C. Gen. Stat. § 115C-45, the plaintiff instead filed a complaint in superior court, alleging that the actions of the board of education and superintendent constituted a breach of contract. Id. After the plaintiff filed suit, the board issued a final agency decision upholding the superintendent's recommendation to revoke the children's admission. Id. The superior court subsequently dismissed the plaintiff's complaint for lack of subject matter jurisdiction. Id.
On appeal, we held that "[w]hen the only remedies available from the agency are shown to be inadequate, a party may seek redress in a court without exhausting administrative remedies. However, the burden of showing the inadequacy of the administrative remedy is on the party claiming the inadequacy." Id. at 523, 658 S.E.2d at 522 (internal citation, quotation marks, and brackets omitted). Moreover, "[t]he party making such a claim must include such allegation in the complaint, and the complaint should be carefully scrutinized to ensure that the claim for relief is not inserted for the sole purpose of avoiding the exhaustion rule." Id . (citation, quotation marks, and brackets omitted). Because we determined that the plaintiff "failed to allege in her complaint that the available administrative remedies were inadequate or that pursuit of those remedies would be futile[,]" we affirmed the trial court's dismissal based on lack of subject matter jurisdiction. Id. at 524, 658 S.E.2d at 523 (citation omitted).
In the present case, as previously discussed, the appeal process outlined in § 115C-325 provided the proper means for Plaintiff to appeal the Board's decision to dismiss him. Because he failed to exhaust his remedies under this statute, he is precluded from attempting to use a breach of contract claim as an alternative to his mandatory statutory remedy. See id. at 523, 658 S.E.2d at 522 (where plaintiff had not exhausted administrative remedies, she could not pursue breach of contract claim).
* * *
For these reasons, the trial court correctly determined that Plaintiff's federal procedural due process claim and his breach of contract claim failed as a matter of law under Rule 12(b)(1). However, we do not believe a legal basis existed for dismissing Plaintiff's remaining claims under Rule 12(b)(1) as none of these claims required the exhaustion of his statutory remedy.
Although the trial court does not appear to have ruled on Defendants' motion based on Rule 12(b)(6), we elect-in the interest of judicial economy-to analyze the validity of Plaintiff's remaining claims under Rule 12(b)(6). See Snuggs v. Stanly Cty. Dep't of Pub. Health , 310 N.C. 739, 740, 314 S.E.2d 528, 529 (1984) ; Swan Beach Corolla, L.L.C. v. Cty. of Currituck , 234 N.C. App. 617, 625, 760 S.E.2d 302, 309 (2014).
B. Rule 12(b)(6)
The standard of review of an order granting a Rule 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On appeal, we review the pleadings de novo to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.
Feltman , 238 N.C. App. at 251, 767 S.E.2d at 619.
"Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A. , 231 N.C. App. 70, 74, 752 S.E.2d 661, 663 (2013) (citation omitted). We address each of Plaintiff's remaining claims in turn.
1. Equal Protection Claim
"To establish an equal protection violation, [a plaintiff] must identify a class of similarly situated persons who are treated dissimilarly." Wang v. UNC-CH Sch. of Med. , 216 N.C. App. 185, 204, 716 S.E.2d 646, 658 (2011) (citation and quotation marks omitted); see also Williams v. Hansen , 326 F.3d 569, 576 (4th Cir.) ("[T]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." (citation and quotation marks omitted)), cert. denied , 540 U.S. 1089, 157 L.Ed. 2d 794 (2003).
In the present case, Plaintiff has not attempted to allege that he was treated differently based on his membership in a protected class such as race, ethnicity, or gender. Instead, he merely makes the conclusory assertion that he was treated "substantially different from that of other similarly-situated Cumberland County Schools' employees, who were also assigned as middle school band directors and/or music teachers."
"[A]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.' " Engquist v. Or. Dep't of Agric. , 553 U.S. 591, 601, 170 L.Ed. 2d 975, 985 (2008). "Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.' " Id. at 602, 170 L.Ed. 2d at 986 (citation and quotation marks omitted).
There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
Id. at 603, 170 L.Ed. 2d at 987.
The United States Supreme Court has held that because the "traditional view of the core concern of the Equal Protection Clause [is] a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign ... the class-of-one theory of equal protection does not apply in the public employment context." Id. at 598, 170 L.Ed. 2d at 983. Thus, because the Supreme Court does not recognize a "class-of-one" theory in the context of public employment, Plaintiff has failed to state a claim for which relief can be granted regarding his federal equal protection claim.
2. Claim for Violation of N.C. Gen. Stat. § 115C-276
Plaintiff contends that he stated a viable claim under N.C. Gen. Stat. § 115C-276 based on his allegation that Defendant Till improperly dismissed him. We disagree.
N.C. Gen. Stat. § 115C-276 states, in pertinent part, as follows:
All acts of local boards of education, not in conflict with State law, shall be binding on the superintendent, and it shall be his duty to carry out all rules and regulations of the board.
All the powers, duties and responsibilities imposed by law upon the superintendents of county administrative units shall, with respect to city administrative units, be imposed upon, and exercised by, the superintendents of city administrative units, in the same manner and to the same extent, insofar as applicable thereto, as such powers and duties are exercised and performed by superintendents of county administrative units with reference to said county administrative units.
N.C. Gen. Stat. § 115C-276(a) (2015).
Based on our review of this statute, it is clear that § 115C-276 was not intended to provide a vehicle for career teachers to bring suits against superintendents challenging their discharge. Accordingly, this claim is meritless.
3. Intentional Infliction of Emotional Distress Claim
Plaintiff next argues that the trial court erred in dismissing his claim for intentional infliction of emotional distress ("IIED").
The essential elements of IIED are (1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress. The determination of whether the conduct alleged was intentional and was extreme and outrageous enough to support such an action is a question of law for the trial judge, and, thus, our review is conducted de novo [.]
A claim for intentional infliction of emotional distress exists when a defendant's conduct exceeds all bounds usually tolerated by decent society. Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
Guthrie v. Conroy , 152 N.C. App. 15, 21-22, 567 S.E.2d 403, 408-09 (2002) (internal citations, quotation marks, and brackets omitted).
This Court has previously held that a decision to summarily fire a public employee did not satisfy the "extreme and outrageous" element as a matter of law. See Sims-Campbell v. Welch , --- N.C. App. ----, ----, 769 S.E.2d 643, 649 (2015). In Sims , we held that the defendant's decision to summarily fire the plaintiff did not constitute "extreme and outrageous" conduct because "the mere firing of an employee can never be 'extreme and outrageous' conduct sufficient to state a claim for intentional infliction of emotional distress." Id. For these same reasons, we affirm the trial court's dismissal of this claim.
4. Tortious Interference with Contract Claim
Plaintiff also argues that the trial court erred in dismissing his claim for tortious interference with contract against Defendant Robertson. Specifically, his amended complaint alleged the following with regard to this claim:
6. .... Defendant Tonjai Robertson is principal of Anne Chesnutt Middle School in Fayetteville, North Carolina, and was the Plaintiff's supervising principal at the time of dismissal/termination. As an employee of Cumberland County Schools, Defendant Tonjai Robertson also operates under the color of law.
7. Defendant[ ] ... Tonjai Robertson [was] aware that the Plaintiff had a contract with the Cumberland County Board of Education.
....
36. Defendant Tonjai Robertson committed the act of malicious/tortious interference with the Plaintiff's contract with Cumberland County Schools in the following manner:
a. Manipulating the Plaintiff's evaluations and/or job assignments wrongfully in an attempt to create a basis for convincing Defendants Cumberland County Board of Education and Superintendent Franklin L. Till, Jr. to breach its contract with the Plaintiff through dismissal/termination under the pretext of inadequate performance, insubordination, immorality, and/or neglect of duty on or before November 5, 2012.
b. Using disparate disciplinary measures, job assignments, and job performance evaluations that were administered in a manner that was substantially different from that of other similarly-situated Cumberland County Schools' employees, who were also assigned as middle school band directors and/or music teachers ... in an attempt to create a basis for Defendants' Cumberland County Board of Education and Superintendent Franklin L. Till, Jr. to breach its contract with the Plaintiff on or before November 5, 2012. This behavior amounted to intentional discrimination against the Plaintiff, other similarly-situated Cumberland County Schools' employees were not subject to these employment actions, nor were they terminated/dismissed in relation to them.
c. Using events, incidents, and assignments that were beyond the scope of the Plaintiff's contractual obligations, not cited within the Cumberland County Board of Education's rules and regulations, and beyond the scope of a teacher's statutory duties as delineated in N.C. G.S. 115C-307 as a basis for convincing Defendants Cumberland County Board of Education and Superintendent Franklin L. Till, Jr. to breach its contract with the Plaintiff through dismissal/termination on or before November 5, 2012.
37. Defendants [sic] Tonjai Robertson's interference with the Plaintiff's contract [was] not legally justified because such actions were not cited within existing Cumberland County Schools' Board rules and regulations, and were beyond the scope of the Plaintiff's statutory duties as delineated in N.C. G.S. 115C-307....
There are five essential elements for a claim of tortious interference with contract:
(1) a valid contract existed between plaintiff and a third person, (2) defendant knew of such contract, (3) defendant intentionally induced the third person not to perform his or her contract with plaintiff, (4) defendant had no justification for his or her actions, and (5) plaintiff suffered damage as a result.
Wagoner v. Elkin City Sch. Bd. of Educ. , 113 N.C. App. 579, 587, 440 S.E.2d 119, 124 (citations omitted), disc. review denied , 336 N.C. 615, 447 S.E.2d 414 (1994). "Whether an actor's conduct is justified depends upon the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor[,] and the contractual interests of the other party." Embree Constr. Grp. v. Rafcor, Inc. , 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (citation and quotation marks omitted).
For claims of tortious interference with a contract, North Carolina makes a distinction between defendants who are "outsiders" and "non-outsiders" to the contract. An outsider is one who was not a party to the terminated contract and who had no legitimate business interest of his own in the subject matter thereof. Conversely, one who is a non-outsider is one who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter.
Combs v. City Elec. Supply Co. , 203 N.C. App. 75, 84, 690 S.E.2d 719, 725 (2010) (citation and formatting omitted), disc. review denied , --- N.C. ----, 706 S.E.2d 492 (2011).
"[N]on-outsiders often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee." Lenzer v. Flaherty , 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (citation and quotation marks omitted), disc. review denied and writ of supersedeas denied , 332 N.C. 345, 421 S.E.2d 348 (1992). However, this privilege is not absolute. Id. Thus, "[i]n order to hold a 'non-outsider' liable for tortious interference with contract, a plaintiff must establish that the defendant acted with legal malice, that he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." Bloch v. Paul Revere Life Ins. Co. , 143 N.C. App. 228, 240, 547 S.E.2d 51, 60 (citation and quotation marks omitted), disc. review denied , --- N.C. ----, 553 S.E.2d 35 (2001) ; see also Pinewood Homes, Inc. v. Harris , 184 N.C. App. 597, 605, 646 S.E.2d 826, 832-33 (2007) ("[A] complaint [for tortious interference] must admit of no motive for interference other than malice.").
This Court has held that a plaintiff successfully asserts a claim for tortious interference against a non-outsider where he alleges that the defendant acted with malice and without a legitimate purpose. In Lenzer , the plaintiff, a physician's assistant, argued that her managers withdrew their supervision of her so that she would lose certification required to maintain her position. Lenzer , 106 N.C. App. at 512, 418 S.E.2d at 286. Specifically, she asserted that the defendants were "motivated by unlawful reasons rather than legitimate business interests[ ] and that withdrawal of supervision in fact caused the intended effect of plaintiff losing her employment, resulting in damage to plaintiff." Id. The defendants contended that because they were in supervisory roles they could not be liable for tortious interference due to their status as non-outsiders. Id.
While we agreed that the defendants-as supervisors-were non-outsiders, we held that "[t]he qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." Id. at 512, 418 S.E.2d at 286. Therefore, because the plaintiff had presented evidence "rais [ing] precisely the issue of wrongful purpose, which purpose would defeat a non-outsider's qualified privilege to interfere[,]" we reversed the trial court's order granting summary judgment to the defendants.
We reaffirmed this principle in Barker v. Kimberly-Clark Corp. , 136 N.C. App. 455, 524 S.E.2d 821 (2000). In that case, the plaintiff filed suit against her former supervisors who had accused her of using illegal drugs and accessing pornography on the company's premises, resulting in her termination by the company. Plaintiff asserted that the defendants had acted "out of personal hostility and ill-will toward [her by] schem[ing] to come up with false and defamatory accusations against the Plaintiff with the intent to bring about the termination of her employment." Id. at 463, 524 S.E.2d at 826 (quotation marks omitted). She also asserted that one of the defendants "had a hit list with names of employees he intended to get rid of and that her name was included." Id. at 463, 524 S.E.2d at 827 (quotation marks omitted).
The trial court granted summary judgment for the defendants as to the plaintiff's tortious interference claim. Id. On appeal, we ruled that "plaintiff's forecast of evidence sufficiently raises the issue as to whether the motives of defendants ... were reasonable, good faith attempts to protect their interests or the corporation's interests." Id. Thus, we reversed the trial court's order. Id. at 464, 524 S.E.2d at 821.
In the present case, Defendants argue that because Defendant Robertson was the principal of the middle school where Plaintiff worked and therefore acted in a supervisory role, any actions she took in disciplining Plaintiff necessarily were based on a legitimate purpose. Defendants cite Wagoner and Privette v. Univ. of North Carolina , 96 N.C. App. 124, 385 S.E.2d 185 (1989), in support of this assertion. However, we find those cases distinguishable because they involved allegations by the plaintiffs suggesting a legitimate purpose for the defendants' actions. See Wagoner , 113 N.C. App. at 587-88, 440 S.E.2d at 124-25 (affirming summary judgment for defendants on tortious interference with contract claim where plaintiff admitted defendants "had a proper motive for their actions of placing plaintiff in the position of ISS coordinator"); Privette , 96 N.C. App. at 134, 385 S.E.2d at 191 (dismissing tortious interference with contract claim where plaintiff's "allegations show[ed] that both [of the defendants] had an interest in insuring proper work procedures at the [lab] and, as such, had a legitimate professional interest in the plaintiff's performance of his duties").
Here, although Plaintiff alleged that Defendant Robertson was the principal of the middle school where he worked, this fact alone does not allow us to conclude as a matter of law at the Rule 12(b)(6) stage that Defendant Robertson's actions were based on a legitimate purpose. Plaintiff's amended complaint is devoid of any allegations that Defendant Robertson was motivated by any factor other than malice toward him. Were we to accept Defendant's argument on this issue, a tortious interference claim could never be stated against a non-outsider supervisor because the qualified privilege accorded to non-outsiders by our prior caselaw would be converted into an absolute privilege. Accordingly, we reverse the trial court's order as to this claim.[1]
5. Claims Under North Carolina Constitution
Plaintiff also argues that he has stated a valid claim for relief under the Law of the Land and Equal Protection clauses of the North Carolina Constitution. It is well established that "[t]o assert a direct constitutional claim ... a plaintiff must allege that no adequate state remedy exists to provide relief for the injury." Copper , 363 N.C. at 788, 688 S.E.2d at 428 (citation omitted). "Indeed, to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." Craig v. New Hanover Cty. Bd. of Educ. , 363 N.C. 334, 339-40, 678 S.E.2d 351, 355 (2009) (citation omitted).
Our appellate courts have consistently held that "[t]he burden of showing the inadequacy of [an] administrative remedy is on the party claiming the inadequacy, and the party making such a claim must include such allegation in the complaint." Swain v. Elfland , 145 N.C. App. 383, 390, 550 S.E.2d 530, 535 (citation and quotation marks omitted), cert. denied , 354 N.C. 228, 554 S.E.2d 832 (2001) ; see also Snuggs , 310 N.C. at 740, 314 S.E.2d at 529 ("[P]laintiffs have failed to allege that they do not have adequate remedies under State law which provide due process.").
Here, as discussed above, § 115C-325 provided Plaintiff with a statutory remedy to seek judicial review of his dismissal. Thus, he possessed "an adequate remedy [that] provide[d] the possibility of relief under the circumstances." Craig , 363 N.C. at 340, 678 S.E.2d at 355 (emphasis added). Moreover, Plaintiff's amended complaint failed to allege that this statutory remedy was inadequate. Thus, because Plaintiff has failed to meet his burden of alleging the inadequacy of an available state law remedy, he is not entitled to assert a direct constitutional claim under North Carolina law.
II. Motion for Leave to Amend
Finally, Plaintiff argues that the trial court erred in denying his motion to amend his complaint. "A ruling on a motion to amend a pleading following the time allowed for amending pleadings as a matter of course is left to the sound discretion of the trial court." Greenshields, Inc. v. Travelers Prop. Cas. Co. , --- N.C. App. ----, ----, 781 S.E.2d 840, 844 (2016) (citation and quotation marks omitted). "A judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." Id. (citation and quotation marks omitted).
It is clear from its 25 February 2016 order that the trial court denied Plaintiff's motion to amend based on its belief that it lacked subject matter jurisdiction over this entire action and that Plaintiff's motion to amend his pleadings was therefore futile. However, because of our conclusion that Plaintiff has stated a valid claim for tortious interference with contract against Defendant Robertson, we reverse the trial court's denial of Plaintiff's motion to amend and direct the court on remand to reconsider Plaintiff's motion in light of our ruling on that issue.
Conclusion
For the reasons stated above, we (1) reverse the trial court's dismissal of Plaintiff's claim for tortious interference with contract against Defendant Robertson and its denial of Plaintiff's motion to amend his complaint; and (2) affirm the remainder of the trial court's 25 February 2016 order.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Report per Rule 30(e).
Chief Judge McGEE and Judge McCULLOUGH concur.

To be clear, we are not holding that Defendant Robertson is precluded at the summary judgment stage from presenting evidence showing that a legitimate purpose existed for her actions toward Plaintiff such that the above-referenced qualified privilege accorded to non-outsiders would entitle her to summary judgment. The only issue currently before this Court is whether Plaintiff has stated a claim for tortious interference with contract sufficient to withstand a motion to dismiss pursuant to Rule 12(b)(6). For the reasons stated above, we conclude that he has done so.