LAURA DELANE BARKER, Plaintiff v. KIMBERLY-CLARK CORPORATION,
CHRISTOPHER SCHNEIDER, and THOMAS WAGAR, Defendants

No. COA99-162

(Filed 1 February 2000)

### 1. Libel and Slander— employment—actual malice—genuine issue of material fact

The trial court erred in granting defendants' motion for summary judgment on the slander per se claim, based on defendant-manager Schneider's accusation in front of third persons at their work that plaintiff-employee used illegal drugs on the company's premises and accessed pornography on the internet on one of the company's computers, because viewing the evidence in the light most favorable to plaintiff reveals a genuine issue of material fact exists concerning actual malice since there is evidence that: (1) although Schneider made a statement to a management employee who would have an interest, right, or duty regarding these activities, Schneider also made a statement to a non-management employee; (2) Schneider exhibited anger, personal hostility, and ill-will towards plaintiff when Schneider made the accusations, and also Schneider exhibited personal hostility towards plaintiff prior to this time; (3) Schneider had a "hit list" with plaintiff's name on it, and Schneider admitted his desire to terminate plaintiff's employment; (4) Schneider made the statements about plaintiff viewing the pornographic material with reckless disregard for the truth since Schneider based his accusation on the general description of a "big, tall muscular woman" and failed to further pursue the report; and (5) the company maintained attendance records, and plaintiff was not working on the date of the alleged incident regarding the pornographic material.

### 2. Employer and Employee— tortious interference with contractual rights—genuine issue of material fact

The trial court erred in granting defendants' motion for summary judgment on the tortious interference with contractual rights claim because viewing the evidence in the light most favorable to plaintiff-employee reveals that a genuine issue of material fact exists since: (1) plaintiff had a permanent position with defendant Kimberly-Clark Corporation for 11 years; (2) defendant-managers, Schneider and Wagar, had knowledge of this contract; (3) Schneider intentionally accused plaintiff of

illegal drug usage and viewing pornography for the purpose of causing her termination; (4) defendant-managers acted solely with malice and without justification rather than for legitimate business interests; and (5) defendant-managers' actions caused plaintiff to lose her employment with Kimberly-Clark, resulting in her damage.

**3. Employer and Employee— tortious interference with contractual rights—non-outsiders to contract**

Although defendants, Schneider and Wager, contend they cannot be liable for a claim of tortious interference with contractual rights since they were managers and thus non-outsiders to plaintiff-employee's employment contract, the trial court erred in granting defendants' motion for summary judgment on this issue because: (1) non-outsider status is pertinent only to the question of whether defendants' actions were justified; (2) the qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract; and (3) plaintiff's forecast of evidence sufficiently raises the issue as to whether the motives of the two managers were reasonable, good faith attempts to protect their interests or the corporation's interests.

**4. Employer and Employee— tortious interference with contractual rights—ratification**

Although defendant Kimberly-Clark Corporation contends it did not ratify any alleged tortious conduct, the trial court erred in granting defendant's motion for summary judgment on the tortious interference with contractual rights claim because plaintiff's forecast of evidence revealed Kimberly-Clark had an Open Door policy investigation and failed to use it, including evidence that: (1) the company's regional vice-president said he had talked with defendant-manager Wager and he was going to stand behind Wager's decision; (2) the company's regional vice-president admitted that he never talked to any of plaintiff's witnesses, nor did he do anything else other than talk to Wager; (3) the company's regional vice-president admitted that the company had no evidence that plaintiff ever accessed pornography on the internet while at work; and (4) another company employee never returned plaintiff's calls when she sought to report that she did not receive a fair investigation.

BARKER v. KIMBERLY-CLARK CORP.

[136 N.C. App. 455 (2000)]

**5. Employer and Employee— negligent supervision—actual or constructive knowledge required**

The trial court did not err in granting defendant Kimberly-Clark Corporation's motion for summary judgment on the claim of negligent supervision because plaintiff's forecast of evidence was insufficient to show that Kimberly-Clark had actual or constructive knowledge of any tortious acts of defendant-manager Schneider since there is no evidence that any employee, including plaintiff prior to her discharge, ever complained to the management about Schneider.

Appeal by plaintiff from judgment entered 23 October 1998 and filed 28 October 1998 by Judge Russell G. Walker, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 16 November 1999.

*Kennedy, Kennedy, Kennedy and Kennedy, L.L.P., by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellant.*

*Powell, Goldstein, Frazer & Murphy, LLP, by Samuel M. Matchett and Jona J. Miller; Smith Helms Mulliss & Moore, L.L.P., by Martin N. Erwin and Julie C. Theall, for defendants-appellees.*

WALKER, Judge.

Plaintiff filed a motion for partial summary judgment on the claim of slander *per se*, which was denied by Superior Court Judge L. Todd Burke on 11 August 1998. Defendants then filed a motion for summary judgment along with supporting affidavits. In an order entered 23 October 1998 and filed 28 October 1998, Superior Court Judge Russell G. Walker, Jr. granted defendants' motion and dismissed all of plaintiff's claims.

From the pleadings and discovery, the evidence tended to show the following: Plaintiff was employed by Kimberly-Clark Corporation (Kimberly-Clark) from October 1985 until 19 August 1996 as a production associate at its Lexington facility. In August 1996, plaintiff was working as a member of the D team, which reported to defendant Schneider, a company manager. Defendant Schneider, in turn, reported to defendant Wagar, the mill manager. While plaintiff received "good" annual written evaluations and numerous certificates of commendation during her 11 years of employment with

Kimberly-Clark, plaintiff had also received several warnings from her supervisors.

Plaintiff alleges that on 12 August 1996, defendant Schneider accused her in front of Elliot Goldson, the Human Resources Manager, of using illegal drugs on the company's premises, but that the accusation was false and slanderous. Also in August 1996, a co-op student, Calvin Marshall, informed Steve O'Bryant, a manager at Kimberly-Clark, that he had seen several employees including "a man with a pony tail and a big, tall muscular woman" viewing sexual material on the internet on a Wednesday and Thursday night shift but that he did not know the employees' names. Defendant Wagar called a meeting of the mill's management team, which consisted of eleven individuals, to discuss the incident. Based on Marshall's descriptions, defendants contend that the management team concluded that the "man with the pony tail" was Wayne Koontz and the "muscular woman" was plaintiff. Then, on 19 August 1996, defendant Schneider met with plaintiff and accused her, in front of Elliot Goldson and another manager, Dan Heaton, of accessing pornography on the internet from a company computer. Defendants contend that during the discharge meeting, plaintiff admitted accessing non-business sites on the internet.

Plaintiff argues, however, that this accusation was false and that she was fired as a result of it. Plaintiff also denies ever accessing any non-business sites on the internet and denies admitting such during the discharge meeting. Instead, plaintiff maintains that she worked primarily in the lab area which is not in close proximity to the computer terminal in question on the Wednesday night of the alleged incident. Further, she states that she was not at work on the Thursday night the incident is alleged to have occurred.

Plaintiff alleges that when defendant Schneider made both of these statements to her, he exhibited "anger, personal hostility, and ill-will" towards her. According to plaintiff, both defendants Schneider and Wagar had exhibited personal hostility towards her prior to August 1996. Specifically, plaintiff contends that defendant Schneider had a "hit list with names of employees he intended to get rid of" and that her name was included. After Rick Purcell, a company manager, confirmed the existence of the "hit list," plaintiff confronted defendant Schneider and he admitted his desire to terminate plaintiff's employment.

Wayne Koontz, a non-management employee of Kimberly-Clark for almost 11 years, was also terminated on 19 August 1996. In his

**BARKER v. KIMBERLY-CLARK CORP.**

[136 N.C. App. 455 (2000)]

affidavit, Koontz stated that he met defendant Schneider at his office on 19 August 1996 and that Schneider informed him that he was terminated for accessing pornographic material on the company's computer. Koontz also averred that defendant Schneider then "stated orally to me that Laura Barker had accessed pornography on the internet on one of the company's computers and that he was also going to fire her."

Plaintiff assigns that the trial court erred in: (1) granting defendants' motion for summary judgment on plaintiff's slander *per se* claim since the court overruled a previous order of another superior court which had determined that genuine issues of material fact existed regarding the slander *per se* claim; (2) granting defendants' motion for summary judgment on plaintiff's slander *per se* claim since there are genuine issues of material fact; (3) granting defendants' motion for summary judgment on plaintiff's claim of tortious interference with contractual rights; and (4) granting defendant Kimberly-Clark's motion for summary judgment on plaintiff's claim of negligent supervision.

Summary judgment is proper when there is no genuine issue as to any material fact and any party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (Cum. Supp. 1998); *Coastal Leasing Corp. v. T-Bar S Corp.*, 128 N.C. App. 379, 496 S.E.2d 795 (1998). Defendant, as the moving party, bears the burden of showing that no triable issue exists. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 62-63, 414 S.E.2d 339, 341-342 (1992). This burden can be met by showing: (1) that an essential element of plaintiff's claim is nonexistent, (2) that discovery indicates plaintiff cannot produce evidence to support an essential element, or (3) that plaintiff cannot surmount an affirmative defense. *Id.* at 63, 414 S.E.2d at 342. Once a defendant has met that burden, the plaintiff must forecast evidence tending to show a *prima facie* case exists. *Id.*

[1] We first address plaintiff's contention that the trial court erroneously granted defendants' motion for summary judgment on plaintiff's slander *per se* claim since issues of fact exist. Slander *per se* is a false statement which is orally communicated to a third person and amounts to:

> (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease.

*Averitt v. Rozier*, 119 N.C. App. 216, 218, 458 S.E.2d 26, 28 (1995). A *prima facie* presumption of malice and a conclusive presumption of legal injury and damage arises when a false statement falling into one of these categories is spoken. *Id.* Thus, an allegation and proof of special damages is not required. *Id.*

In her affidavit, plaintiff alleges that defendant Schneider falsely accused her of using illegal drugs on the company's premises and of accessing pornography on the internet on one of the company's computers. She further alleges that these accusations were made in front of third persons, amounted to accusations of crimes involving moral turpitude, and impeached her in her trade, business, or profession.

Defendants argue that defendant Schneider's statements did not amount to an accusation of a crime of moral turpitude or tend to impeach plaintiff in her trade, business, or profession, and further contend that even if any of the three statements constitute slander *per se*, the statements made by defendant Schneider were privileged. A defamatory statement is qualifiedly privileged when made:

> (1) in good faith, (2) on subject matter (a) in which the declarant has an interest or (b) in reference to which the declarant has a right or duty, (3) to a person having a corresponding interest, right, or duty, (4) on a privileged occasion, and (5) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Averitt*, 119 N.C. App. at 219, 458 S.E.2d at 29. The existence of the privilege creates a presumption that the communication was made in good faith and without malice. *Phillips v. Winston-Salem/Forsyth County Bd. of Educ.*, 117 N.C. App. 274, 278, 450 S.E.2d 753, 756 (1994), *disc. review denied*, 340 N.C. 115, 456 S.E.2d 318 (1995). To rebut this presumption, the plaintiff must show the statement was made with actual malice. *Id.*

Plaintiff first argues that defendant Schneider's statement to Koontz was not privileged since Koontz had no corresponding interest, right, or duty. In his affidavit, Koontz states that he was a non-management employee at Kimberly-Clark, who was terminated just prior to defendant Schneider stating orally to him that "Laura Barker had accessed pornography on the internet on one of the company's computers and that he was going to fire her." Koontz's affidavit further provides:

> When Christopher Schneider made the statement to me about Laura Barker, I had no need for or interest in [the] information; and I had no duty to perform with respect to this information.

Although plaintiff admits that Kimberly-Clark's management employees would have an interest, right, or duty regarding an employee's illegal drug use on its premises or the accessing of pornographic material on the company's computer, she contends that there was sufficient evidence of actual malice to rebut any presumption of a qualified privilege. Actual malice may be proved by showing:

> evidence of ill-will or personal hostility on the part of the declarant ... or by showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity.

*Clark v. Brown*, 99 N.C. App. 255, 263, 393 S.E.2d 134, 138, *cert. denied*, 327 N.C. 426, 395 S.E.2d 675 (1990).

Here, plaintiff alleges that defendant Schneider exhibited "anger, personal hostility, and ill-will" towards her when he made the accusations in August 1996 and that he had exhibited personal hostility towards her prior to this time. Specifically, plaintiff contends that defendant Schneider had a "hit list" with her name on it and that he admitted his desire to terminate her employment. Additionally, plaintiff argues that defendant Schneider made the statements regarding plaintiff's alleged viewing of pornographic material with reckless disregard for the truth since he based his accusation on the generic description of a "big, tall muscular woman" and failed to further pursue Marshall's report. In her affidavit, plaintiff further states:

> During my employment, the company maintained attendance records documenting the days I worked at the company and the days I was scheduled to work. On the Thursday night in question, I was not scheduled to work and I did not work that night. The description of a "big muscular girl" does not fit me, because I am 5 feet, 7 inches tall. There were females as tall as and taller than me during my employment with Kimberly-Clark.

After a careful review, we find that an issue of fact exists regarding plaintiff's slander *per se* claim and thus the trial court improperly granted defendants' motion for summary judgment as to this issue. Based on this finding, we need not address plaintiff's assignment of

error that one superior court improperly overruled another superior court.

[2] We next address plaintiff's contention that the trial court erroneously granted defendants' motion for summary judgment on plaintiff's claim of tortious interference with her contractual rights. The elements of tortious interference are: (1) the existence of a valid contract between plaintiff and a third party; (2) knowledge by defendant of the contract; (3) acts by defendant to intentionally induce the third party not to perform the contract; (4) defendant's acts were committed without justification; and (5) actual damage to the plaintiff. *Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176, 181-182 (1954). Here, plaintiff's complaint and discovery documents give an evidentiary forecast adequate to withstand defendants' motion for summary judgment since (1) plaintiff held a permanent position with Kimberly-Clark, where she had been employed for 11 years; (2) defendants Schneider and Wagar, as managers, had knowledge of this contract; (3) defendant Schneider intentionally accused plaintiff of illegal drug usage and of viewing pornography for the purpose of causing her termination; (4) defendants Schneider and Wagar acted "solely with malice and without justification" rather than for legitimate business interests; and (5) the actions of defendants Schneider and Wagar caused plaintiff to lose her employment with Kimberly-Clark, resulting in damage to her.

[3] Defendants Schneider and Wagar contend that they cannot be liable for a claim of tortious interference with contractual rights since they were managers and thus non-outsiders to plaintiff's employment contract. It is true that non-outsiders often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee. *Lenzer v. Flaherty*, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286, *cert. denied*, 332 N.C. 345, 421 S.E.2d 348 (1992). However, non-outsider status is pertinent only to the question of whether the defendant's action was justified. *Id.* "The qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." *Id.*; *see Wilson v. McClenny*, 262 N.C. 121, 133, 136 S.E.2d 569, 578 (1964) (holding that directors and stockholders were privileged to purposely cause the corporation not to renew plaintiff's contract as president if they did not employ any improper means and if they acted in good faith to protect the corporation's interests); *see also Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *cert. denied*, 314 N.C.

331, 333 S.E.2d 490 (1985) (holding that non-outsider status is immaterial where the allegations in the complaint show defendants' motives for procuring the plaintiff's termination were unrelated to their business interest).

Here, plaintiff alleges that defendant Schneider falsely accused her of taking illegal drugs and accessing pornographic material on the internet and that "defendants Schneider and Wagar, out of personal hostility and ill-will toward the Plaintiff, schemed to come up with false and defamatory accusations against the Plaintiff with the intent to bring about the termination of her employment." Further, plaintiff contends that defendant Schneider had a "hit list with names of employees he intended to get rid of" and that her name was included, and when she confronted defendant Schneider regarding the "hit list," he admitted his desire to terminate her employment. Thus, plaintiff's forecast of evidence sufficiently raises the issue as to whether the motives of defendants Schneider and Wagar were reasonable, good faith attempts to protect their interests or the corporation's interests.

[4] Defendant Kimberly-Clark also contends that it did not ratify any alleged tortious conduct. In her affidavit, however, plaintiff alleges:

> 6. When Christopher Schneider fired me, I told him that I did not access pornography on the company's computer. I asked to meet with Tom Wagar, the plant manager. When I met with him, I told him that these accusations were false, and I asked him to investigate this. He declined to do so. Kimberly-Clark Corporation has an Open Door policy. I used the Open Door policy and called Wayne Sanders, the President and CEO of Kimberly-Clark. He never returned my calls, although I talked with his secretary on several occasions. I received a call from Jerry Schwoerer, the company's regional Vice-President, at its Roswell, Georgia facility. I told Mr. Schwoerer that I had been falsely accused by Chris Schneider and wrongfully fired by him. Mr. Schwoerer said that he would do an Open Door policy investigation and I gave him details of the situation concerning Chris Schneider's conduct toward me. Mr. Schwoerer said that he would interview my witnesses, and I gave him a list of the employees on my team, the D1 team. The Open Door Policy requires that the company conduct a fair and thorough investigation. When Mr. Schwoerer called me back, he informed me that he had talked with Tom Wagar and that he was going to stand behind Tom's decision. He admitted to me

that he never talked to any of the witnesses that I had given him, nor did he do anything else other than talk with Tom Wagar. He stated that Kimberly-Clark had no evidence that I had ever accessed pornography on the Internet while at work. I called Wayne Sanders after that and told his secretary that Mr. Schwoerer had not conducted a proper Open Door Policy investigation. I asked her to have Wayne Sanders call me. I told her that my situation was urgent. I never heard from Wayne Sanders. Kimberly-Clark failed to follow its Personnel policies and practices, because although an Open Door Policy investigation was supposed to be fair and thorough, this did not occur in my case. In addition, Kimberly-Clark had a Progressive Disciplinary Policy, which it also failed to follow in my case. A fair and thorough investigation would have revealed that I was not even at work the night that Calvin Marshall allegedly observed pornography pulled up on the company computer.

Based on these allegations, plaintiff's forecast of evidence was sufficient to show that there was an issue of fact regarding defendant Kimberly-Clark's ratification; therefore, summary judgment on this issue was improperly granted.

[5] Plaintiff also assigns as error the trial court's granting of summary judgment to defendant Kimberly-Clark on the claim of negligent supervision. In the recent case of *Smith v. Privette*, 128 N.C. App. 490, 494-95, 495 S.E.2d 395, 398, *appeal dismissed*, 348 N.C. 284, 501 S.E.2d 913 (1998), this Court held that to support a claim of negligent supervision against an employer the plaintiff must prove:

that the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency.

There is no evidence here that any employee, including plaintiff prior to her discharge, ever complained to the management at Kimberly-Clark about defendant Schneider. Thus, we conclude that plaintiff's forecast of evidence was insufficient to show that defendant Kimberly-Clark had actual or constructive knowledge of any tortious acts of defendant Schneider and that the trial court properly granted defendant's motion for summary judgment on the negligent supervision claim.

In summary, the trial court erred in granting defendants' motion for summary judgment on plaintiff's slander per se claim and plain-

tiff's tortious interference with contractual rights claim. Summary judgment for defendant Kimberly-Clark on plaintiff's negligent supervision claim is affirmed.

Affirmed in part and reversed in part.

Judges GREENE and TIMMONS-GOODSON concur.