An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-31-2

Filed 9 December 2025

Durham County, No. 18CVS002942-310

JAMES HWANG, MD, Plaintiff,

v.

BRUCE CAIRNS, THE UNIVERSITY OF NORTH CAROLINA, THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL and UNIVERSITY OF NORTH CAROLINA HEALTH CARE SYSTEM, Defendants.

Appeal by plaintiff from orders entered 6 August 2021 by Judge John M. Dunlow in Durham County Superior Court, and cross-appeal by defendants from order entered 4 April 2019 by Judge Lora Cubbage in Durham County Superior Court. Originally heard in the Court of Appeals 2 November 2022, with opinion issued 17 January 2023. On 23 May 2025, the Supreme Court reversed the decision of the Court of Appeals affirming the trial court's grant of summary judgment in favor of Defendant Cairns and remanded to this Court for reconsideration of the parties' remaining arguments.

> *Zaytoun Ballew & Taylor, PLLC, by John R. Taylor, Robert E. Zaytoun, Matthew D. Ballew, and Clare F. Kurdys, for plaintiff-appellant/cross-appellee.*

*Attorney General Jeff Jackson, by Special Deputy Attorney General Lindsay Vance Smith, and Hartzog Law Group LLP, by Dan M. Hartzog and Katie Weaver Hartzog, for defendant-appellee/cross-appellant Bruce Cairns.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Eric M. David, for defendants-appellees/cross-appellants the University of North Carolina and the University of North Carolina at Chapel Hill, UNC Office of University Counsel, by Marla S. Bowman, for defendant-appellee/cross-appellant the University of North Carolina at Chapel Hill, and University of North Carolina, by Laura E. Dean, for defendant-appellee/cross-appellant the University of North Carolina.*

*Attorney General Jeff Jackson, by Assistant Attorney General Robert T. Broughton, and Wyrick Robbins Yates & Ponton LLP, by T. Cullen Stafford and Michael D. DeFrank, for defendant-appellee/cross-appellant the University of North Carolina Health Care System.*

ZACHARY, Judge.

This case returns to us for reconsideration of limited issues following remand by our Supreme Court. In the first appeal to this Court, Plaintiff James Hwang, M.D., appealed from the trial court's 6 August 2021 orders granting summary judgment in favor of Defendants the University of North Carolina Health Care System and Bruce Cairns, M.D., and its order granting Defendants the University of North Carolina and the University of North Carolina at Chapel Hill's motions to dismiss and for summary judgment.[1] Plaintiff also appealed from the court's 6 August 2021 order

---

[1] Given that Dr. Cairns is the only remaining defendant at issue in this opinion, for ease of reading, we refer to Dr. Cairns as "Defendant" and the University of North Carolina, the University of North Carolina at Chapel Hill, and the University of North Carolina Health Care System collectively as "the University Defendants." Where appropriate, we use "Defendants" to refer collectively to all of the original Defendants.

dismissing as moot Plaintiff's motion for leave to file a second amended complaint. Lastly, Defendants cross-appealed from the trial court's 4 April 2019 order denying their motions to dismiss Plaintiff's amended complaint.

In *Hwang v. Cairns* ("*Hwang I*"), 287 N.C. App. 521, 882 S.E.2d 153, 2023 WL 192912 (2023) (unpublished), a unanimous, unpublished opinion filed on 17 January 2023, this Court, *inter alia*: (1) affirmed the trial court's grant of summary judgment in favor of the University Defendants, *Hwang I*, 2023 WL 192912 at *8–*9; (2) affirmed the court's grant of summary judgment in favor of Defendant, *id.* at *11; (3) determined that Plaintiff had abandoned any arguments on appeal concerning the grant of summary judgment on his claims for slander *per quod* and his request for punitive damages against Defendant, as well as the joint and several liability of all Defendants, *id.*; (4) concluded that "[w]hile it was error for the trial court to grant the motions for summary judgment without first ruling on Plaintiff's motion to amend his pleadings under Rule 15(a), the error was harmless," *id.* at *12 (cleaned up); and (5) dismissed as moot Defendants' joint cross-appeal from the court's denial of their motions to dismiss. *id.* at *13.

Plaintiff filed a petition for discretionary review on 21 February 2023, and Defendants filed a conditional petition for discretionary review on 6 March 2023. *Hwang v. Cairns* ("*Special Order*"), 385 N.C. 298, 298, 890 S.E.2d 913, 914 (2023). In a special order filed 30 August 2023, our Supreme Court allowed limited review of Plaintiff's "first proposed issue": "Did the Court of Appeals err in affirming the order

granting Defendant Cairns's Motion for Summary Judgment? This issue is only allowed as to [P]laintiff's slander per se and tortious interference of contract claims against [D]efendant Cairns." *Id.* (Italics omitted). The Supreme Court also allowed limited review of Defendants' conditional petition for discretionary review "as to the sole issue presented": "Did the trial court err in denying [D]efendants' initial motions to dismiss [P]laintiff's amended complaint under Civil Rules 12(b)(1), 12(b)(2) and 12(b)(6). This issue is only allowed as to [D]efendant Cairns's immunity defenses as they apply to Dr. Hwang's claims for slander per se and tortious interference with contract." *Id.* (Italics omitted).[2]

On 23 May 2025, our Supreme Court reversed our decision affirming the trial court's grant of summary judgment in favor of Defendant. *Hwang v. Cairns* ("*Hwang II*"), 387 N.C. 448, 449, 915 S.E.2d 425, 427 (2025). The Court concluded that "Defendant is not a public official, and he is not entitled to public official immunity" and "decline[d] the parties' invitation to address additional issues." *Id.* at 457–58, 915 S.E.2d at 432. The Court remanded the matter to this Court for reconsideration of the parties' remaining arguments. *Id.* at 458, 915 S.E.2d at 432.

In light of our Supreme Court's conclusion that Defendant is not entitled to public official immunity, we now reverse the trial court's grant of summary judgment

---

[2] Because the Supreme Court limited its review to claims and defenses related solely to Defendant, the University Defendants were not parties to the appeal before the Supreme Court in *Hwang II* and are therefore no longer before this Court.

in favor of Defendant on Plaintiff's claims for slander per se and tortious interference with contract. Our Supreme Court has also foreclosed Defendant's cross-appeal from the trial court's denial of his motion to dismiss, as it is premised on his claim of public official immunity.[3]

## I.   Background

The full facts and procedural history of this matter are set forth in *Hwang I* and *II*. We recite here only those facts necessary for our analysis of the trial court's grant of summary judgment in favor of Defendant on Plaintiff's claims of slander per se and tortious interference with contract.

"Plaintiff was a surgeon with the UNC Burn Center from 2010 until 2017. In June 2017, [he] resigned to accept a similar position with another medical center. Plaintiff alleged that his decision to leave resulted from, in part, [D]efendant's relentless harassment and creation of a hostile work environment." *Hwang II*, 387 N.C. at 449–50, 915 S.E.2d at 427. "When [P]laintiff announced that he was leaving the UNC Burn Center, three of [his] colleagues planned and paid for a surprise going-away party at an off-campus restaurant." *Id.* at 450, 915 S.E.2d at 427. "UNC Burn Center employees, family members, and [P]laintiff's wife attended. Defendant was invited but did not attend." *Id.*

"Two weeks after the party, a complaint was filed with the UNC School of

---

[3] Several of this Court's holdings in *Hwang I* were not before our Supreme Court and thus remain undisturbed. *See Hwang I*, 2023 WL 192912 at *8–*9, *11–*13.

Medicine Human Resources Department alleging that [P]laintiff had exhibited inappropriate, disruptive, and sexually offensive behavior during the party." *Id.* "Specifically, the complaint stated that social media posts showed [P]laintiff touching female coworkers' breasts and posing with a stripper. The UNC School of Medicine conducted an investigation and interviewed [P]laintiff, [D]efendant, and two of the party hosts." *Id.* "The final report for the investigation did not disclose the source of the complaint, and the parties dispute whether the complaint was made by [D]efendant or Dr. Shiara Ortiz-Pujols, a research fellow who worked for [D]efendant." *Id.*

During the investigation, Defendant provided differing accounts as to whether he was the source of the complaint:

> Defendant was interviewed twice as part of the investigation, and he told investigators that "after getting reports from people who attended the party and seeing pictures on social media, there was no doubt that he/she needed to bring it forward to discuss." But [D]efendant claimed that he could not remember who showed him the pictures or on which social media site they were posted. Defendant testified in a deposition, contrary to the information he provided to investigators, that he did not actually see the pictures and that Dr. Ortiz-Pujols was the source of the complaint. Although the Associate Dean for Human Resources testified that investigators routinely interview individuals with information relevant to alleged misconduct, Dr. Ortiz-Pujols was not interviewed.

*Id.* at 450–51, 915 S.E.2d at 428.

When the formal investigation into Plaintiff's alleged misconduct began,

Plaintiff's supervisors withheld an incentive payment of approximately $63,000.00. *Id.* at 451, 915 S.E.2d at 428. "On 9 November 2017, when the investigation concluded, [P]laintiff received his incentive compensation." *Id.* On 30 May 2018, Plaintiff filed suit against Defendants. *Id.* Plaintiff advanced, *inter alia*, claims of slander per se and tortious interference with contract against Defendant in his individual capacity. *Id.* "Specifically, [P]laintiff asserted that [D]efendant falsely accused him of inappropriate and unprofessional behavior and sexual misconduct. This included touching co-workers' breasts, taking inappropriate pictures, and making other false statements about [P]laintiff. Plaintiff's complaint also alleged that [D]efendant made false statements with malice knowing they were false and fraudulent." *Id.* (cleaned up).

"In February 2021, all of the [D]efendants moved for summary judgment." *Id.* The documentary evidence before the trial court on summary judgment "suggested conflicting evidence about the . . . origin and timing" of the complaint filed against Plaintiff. *Id.* As our Supreme Court explained in *Hwang II*, "the record shows that the question of who made the complaint is disputed" and "[d]uring the UNC investigation, the investigators believed, according to their deposition testimony, that [D]efendant himself made the complaint." *Id.* at 450 n.1, 915 S.E.2d at 427 n.1.

On 6 August 2021, the trial court entered an order granting Defendant's motion for summary judgment, finding "no genuine issue as to any material fact" and concluding that Defendant was "entitled to judgment as a matter of law as to all

claims against him." On appeal, this Court affirmed the trial court's grant of summary judgment against Defendant because we concluded that Defendant was "a public official entitled to immunity" and that Plaintiff was "unable to show that [Defendant] acted with the malice required to overcome [his] public official immunity." *Hwang I*, 2023 WL 192912 at \*10–\*11.

As set forth above in full, our Supreme Court allowed limited review of Plaintiff's "first proposed issue" and allowed limited review of Defendants' conditional petition. *Special Order*, 385 N.C. at 298, 890 S.E.2d at 914.

In *Hwang II*, our Supreme Court concluded that "Defendant is not a public official, and he is not entitled to public official immunity." 387 N.C. at 457, 915 S.E.2d at 432. The Court also concluded that it had improvidently allowed Defendant's conditional petition for discretionary review, *id.* at 453 n.2, 915 S.E.2d at 429 n.2, and remanded the matter to this Court for reconsideration of the remaining issues. *Id.* at 458, 915 S.E.2d at 432.

## II.   Discussion

In light of our Supreme Court's holding that Defendant is not entitled to public official immunity, on remand we reconsider Defendant's cross-appeal of the trial court's 2019 order denying his motion to dismiss, and Plaintiff's argument that the trial court erred by granting summary judgment in favor of Defendant as to Plaintiff's claims of slander per se and tortious interference with contract. After careful review, we affirm the order denying the motion to dismiss, and reverse and remand for

further proceedings on Plaintiff's claims of slander per se and tortious interference with contract.

### A. Cross-Appeal

We first address Defendant's cross-appeal from the trial court's order denying his motion to dismiss. In *Hwang I*, this Court dismissed as moot Defendants' joint cross-appeal of the order denying their motion to dismiss because we affirmed the trial court's grant of summary judgment. *Hwang I*, 2023 WL 192912 at \*13. When allowing the petition for discretionary review of the denial of the motion to dismiss, our Supreme Court limited its review to Defendant's "immunity defenses as they apply to [Plaintiff]'s claims for slander per se and tortious interference with contract." *Special Order*, 385 N.C. at 298, 890 S.E.2d at 914 (italics omitted). In *Hwang II*, the Court addressed Defendant's petition in a footnote: "Defendant appealed [the] denial of his 2019 motion to dismiss to the Court of Appeals. Defendant's cross-appeal on this issue was determined to be moot given the Court of Appeals' decision regarding summary judgment, and we conclude that [D]efendant's conditional petition for discretionary review was improvidently allowed." 387 N.C. at 453 n.2, 915 S.E.2d at 429 n.2. *But see id.* at 459, 890 S.E.2d at 433 (Riggs, J., concurring) ("This Court obviously could decide that discretionary review was improvidently allowed, but we did not do so and cannot just ignore issues we have explicitly decided to address.")

The disposition at the end of *Hwang II* reads only "REVERSED AND REMANDED" and makes no mention of the conclusion that the petition was

improvidently allowed. *Id.* at 458, 915 S.E.2d at 432 (majority opinion). Nevertheless, we favor "substance over form" and read this footnote as carrying the full weight of the Supreme Court's ultimate disposition. *See State v. Armstrong*, 232 N.C. 727, 729, 62 S.E.2d 50, 51 (1950). However, to the extent that Defendant's cross-appeal is still before us, we consider this matter briefly. In that our Supreme Court reversed the trial court's determination as to Defendant's public official immunity in *Hwang II*, his cross-appeal is no longer moot. Instead, it is now foreclosed.

In his portion of the joint cross-appeal, Defendant contended that the trial court erred by concluding that he "was not a public official and therefore was not entitled to immunity." Our Supreme Court rejected this argument. *Hwang II*, 387 N.C. at 457, 915 S.E.2d at 432. Accordingly, we affirm the trial court's order denying Defendant's motion to dismiss. We shall not address the University Defendants' portion of the joint cross-appeal, which was previously dismissed as moot in *Hwang I* and which holding the *Hwang II* Court did not disturb.

**B. Summary Judgment**

We next consider plaintiff's challenge to the summary judgment order. Plaintiff argues that the trial court erred by granting Defendant's motion for summary judgment regarding Plaintiff's claims for slander per se and tortious interference with contract because "all material facts of [his] claims . . . [we]re supported by substantial evidence and [we]re not barred by any affirmative defense." We agree.

### 1. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2023). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted).

An issue is genuine if it is "supported by substantial evidence, and an issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *James H.Q. Davis Tr. v. JHD Props., LLC*, 387 N.C. 19, 23, 910 S.E.2d 652, 657 (2025) (cleaned up). "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Id.* (citation omitted). "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Id.* (citation omitted). "The responding party may not rest upon mere allegations or denials in the pleadings, and its response must set forth specific facts showing that there is a genuine issue for trial." *Id.* (cleaned up).

An appellate court conducts de novo review of a trial court's order granting summary judgment. *Hwang II*, 387 N.C. at 453, 915 S.E.2d at 429. "When reviewing de novo, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Asher v. Huneycutt*, 284 N.C. App. 583, 588, 876 S.E.2d 660, 666 (2022) (cleaned up).

### 2. *Slander Per Se*

Slander per se is a defamation action, requiring Plaintiff to prove that: (1) Defendant "spoke base or defamatory words which tended to prejudice [Plaintiff] in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." *West v. King's Dept. Store, Inc.*, 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1988). Even if Plaintiff shows these elements, however, "a defamation action will not lie if the circumstances under which the statement was published confer upon the publisher a privilege to publish it." *Bouvier v. Porter*, 386 N.C. 1, 10, 900 S.E.2d 838, 846 (2024) (cleaned up).

Here, Plaintiff contends that the trial court erred by granting summary judgment in favor of Defendant on Plaintiff's slander per se claim because he presented substantial evidence that Defendant "maliciously published false accusations that Plaintiff committed sexual misconduct." Defendant, however, maintains that "summary judgment was properly entered" in his favor because, *inter alia*, "the statements were subject to absolute privilege and qualified privilege."

Although Defendant's claim of absolute privilege was properly before us in *Hwang I*, he has since abandoned this argument: "[I]ssues properly presented for review in the Court of Appeals, but not then stated in the notice of appeal or the petition accepted by the Supreme Court for review and discussed in the new briefs . . . for review by that Court, are deemed abandoned." N.C.R. App. P. 28(a). Our review of Defendant's petition and briefs to the Supreme Court reveals only passing references to absolute privilege or its particular form in this matter, quasi-judicial immunity. *See Vest v. Easley*, 145 N.C. App. 70, 73, 549 S.E.2d 568, 572 (2001). None of the references are contained within arguments that he was entitled to absolute privilege; accordingly, we will not address this abandoned claim, and turn next to Defendant's claim of qualified privilege.

Qualified privilege rests upon a common-law principle of public policy: "When an otherwise defamatory communication is made in pursuance of a political, judicial, social, or personal duty, an action for libel or slander will not lie though the statement be false unless actual malice be proved in addition." *Dobson v. Harris*, 352 N.C. 77, 81–82, 530 S.E.2d 829, 834 (2000) (cleaned up).

> The defense of qualified or conditional privilege arises in circumstances where (1) a communication is made in good faith, (2) the subject and scope of the communication is one in which the party uttering it has a valid interest to uphold, or in reference to which he has a legal right or duty, and (3) the communication is made to a person or persons having a corresponding interest, right, or duty.

*Presnell v. Pell*, 298 N.C. 715, 720, 260 S.E.2d 611, 614 (1979) (emphasis omitted).

The element of good faith is a key contention in this case. Plaintiff contends that "there is only clear evidence of actual malice by [Defendant], which defeats the qualified immunity." Defendant responds that he "made the statements in a proper manner and on a privileged occasion" and claims that "Plaintiff does not point to any reason, beyond speculation and conjecture, why [Defendant] should have doubted the credibility of such reports and not followed through with his duty to share these concerns with his supervisor," therefore, his "statements are entitled to qualified privilege." (Capitalization omitted).

But assuming, *arguendo*, that Defendant is entitled to a qualified-privilege defense, Plaintiff may overcome that defense "if he can prove that the words were not used bona fide, but that . . . [D]efendant used the privileged occasion artfully and knowingly to falsely defame" him. *Ponder v. Cobb*, 257 N.C. 281, 293, 126 S.E.2d 67, 76 (1962) (italics omitted).

Taking the evidence in the light most favorable to Plaintiff, our careful review of the record reveals the existence of a genuine issue of material fact: whether Defendant acted with malice, thereby defeating any applicable defense of qualified privilege. *See In re Will of Jones*, 362 N.C. at 573, 669 S.E.2d at 576. As the concurring opinion in *Hwang II* detailed:

> [Plaintiff] forecast evidence from the investigation report and the depositions of the investigators indicating that the source of the complaint was [Defendant], not Dr. Ortiz-Pujols. [Plaintiff] forecast evidence that [Defendant] significantly changed his testimony between his interview

> with the investigators and his deposition in this case. In his interview with the investigators, [Defendant] stated that he personally saw pictures of misconduct. In contrast, in his deposition, [Defendant] testified that he never saw any pictures of sexual misconduct. This evidence, coupled with [Defendant's] pattern of harassing and threatening [Plaintiff] and other medical doctors who left the institution, may support an inference at this permissive stage that [Defendant] was manufacturing a complaint rather than bringing forth a valid concern.

387 N.C. at 461, 915 S.E.2d at 434 (Riggs, J., concurring).

In addition to producing evidence that tends to support that Defendant acted with malice, Plaintiff also raised general questions regarding Defendant's credibility and character:

> [Plaintiff] produced numerous depositions and affidavits from UNC Burn Center employees in which those employees attested that [Defendant] previously threatened or made false complaints for the purpose of damaging the professional reputations of doctors, nurses, and physician assistants at the UNC Burn Center. Furthermore, the deposition testimony supports an inference that [Defendant] acted in a threatening and hostile manner towards [Plaintiff]. Last, [Plaintiff] produced deposition and affidavit evidence from several witnesses who attended the party at issue and attested that there was no basis for a complaint.

*Id.* at 461, 915 S.E.2d at 434–35.

In sum, Plaintiff has demonstrated on appeal that there remain genuine issues of material fact concerning Defendant's entitlement to the defense of qualified privilege; these questions of fact "must be resolved by a jury at trial and not by a trial court at summary judgment." *N.C. Farm Bureau Mut. Ins. Co. v. Herring*, 385 N.C.

419, 425, 894 S.E.2d 709, 714 (2023). We therefore reverse and remand the trial court's summary judgment order as to Plaintiff's claim for slander per se. "[O]n remand, the trial court must consider the forecast of evidence to determine whether qualified immunity is applicable and whether there is a triable issue of fact for a jury on slander per se." *Hwang II*, 387 N.C. at 461–62, 915 S.E.2d at 435 (Riggs, J., concurring).

### 3. *Tortious Interference with Contract*

To maintain an action for tortious interference with contract, Plaintiff must show: "(1) the existence of a valid contract between [P]laintiff and a third party; (2) knowledge by [D]efendant of the contract; (3) acts by [D]efendant to intentionally induce the third party not to perform the contract; (4) [D]efendant's acts were committed without justification; and (5) actual damage to . . . [P]laintiff." *Barker v. Kimberly-Clark Corp.*, 136 N.C. App. 455, 462, 524 S.E.2d 821, 826 (2000).

On appeal, Plaintiff contends that the trial court erroneously entered summary judgment for Defendant on Plaintiff's claim for tortious interference with contract because the evidence supported that Defendant "not only knew his false accusations would result in a frivolous investigation, contract breach and subsequent damages," but also that he made such false allegations "with malice and personal animus towards Plaintiff."

In *Barker*, two of the defendants were the plaintiff's managers and had knowledge of her permanent employment contract. *Id.* The plaintiff "allege[d] that

- 16 -

[one] defendant . . . falsely accused her of taking illegal drugs and accessing pornographic material on the internet" and that the two defendant-managers—acting "out of personal hostility and ill-will toward the [p]laintiff—schemed to come up with false and defamatory accusations against the [p]laintiff with the intent to bring about the termination of her employment." *Id.* at 463, 524 S.E.2d at 826. The *Barker* Court reversed the trial court's grant of summary judgment on the plaintiff's tortious-interference claim, reasoning that the "plaintiff's forecast of evidence sufficiently raise[d] the issue as to whether the motives of [two of the] defendants . . . were reasonable, good faith attempts to protect their interests or [their employer]'s interests." *Id.* at 463–64, 524 S.E.2d at 827.

Here, Plaintiff's theory and proffered evidence in favor of his claim for tortious interference with contract are similar to that presented in *Barker*. Plaintiff accuses Defendant of knowing the relevant terms of Plaintiff's employment contract—namely, that his wages would be withheld pending an investigation of his alleged conduct—and of acting with the belief that the UNC Health Care System "policy would not allow his report to be ignored, discredited, or rejected without screening and investigation." As in *Barker*, Plaintiff's "forecast of evidence sufficiently raises the issue as to whether [Defendant's] motives . . . were reasonable, good faith attempts to protect [his] interests or [their employer]'s interests." *Id.*

The issue of whether Defendant acted with wrongful purpose presents a question of fact for the jury on this claim, as well. In *Lenzer v. Flaherty*, this Court

explained that while a "non-outsider" to an employment contract may "enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee," the "qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." 106 N.C. App. 496, 513, 418 S.E.2d 276, 286, *disc. review denied*, 332 N.C. 345, 421 S.E.2d 348 (1992). "[W]hen the issue to be decided is the intent of a party, the general rule is that it is a question of fact to be determined by a jury." *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 663, 370 S.E.2d 375, 388 (1988). "Plaintiff's forecast of evidence raises precisely the issue of wrongful purpose, which purpose would defeat a non-outsider's qualified privilege to interfere." *Lenzer*, 106 N.C. App. at 513, 418 S.E.2d at 286.

Defendant nevertheless asserts that because UNC-Chapel Hill "acted in accordance with its policies in withholding Plaintiff's incentive pay pending the outcome of the investigation, there was no actionable breach of contract."[4] "In the absence of a breach of contract," Defendant claims, he "cannot be held liable for interference with contract and summary judgment was properly entered on this basis alone." We disagree.

It is well settled that the party raising a tortious-interference claim "does not

---

[4] We note that Plaintiff did eventually receive this incentive payment: "On 9 November 2017, when the investigation concluded, [P]laintiff received his incentive compensation." *Hwang II*, 387 N.C. at 451, 915 S.E.2d at 428.

- 18 -

have to prove that [the defendant] caused [the contracting party] to *breach* its contract with [the plaintiff], because its claim is only that [the defendant] wrongfully *interfered* with [the plaintiff]'s rights under the contract." *Lexington Homes, Inc. v. W.E. Tyson Builders, Inc.*, 75 N.C. App. 404, 411, 331 S.E.2d 318, 322 (1985). Defendant's contention that "there was no actionable breach of contract" is "largely irrelevant to the thrust and tenor of [Plaintiff]'s case against [him] and the recorded evidence in support of it." *Id.* at 410, 331 S.E.2d at 322.

Ultimately, summary judgment was an inappropriate vehicle for resolving Plaintiff's tortious-interference claim as Plaintiff has forecast evidence sufficient to raise genuine issues of material fact. *See, e.g.*, *Est. of Graham v. Lambert*, 385 N.C. 644, 652, 898 S.E.2d 888, 896 (2024) ("To survive summary judgment, . . . the plaintiff need not *convince* the court that he would prevail on a triable issue of material fact but only that the issue *exists*." (cleaned up)). Accordingly, we also reverse the trial court's order granting summary judgment to Defendant as to this claim and remand for further proceedings.

## III. Conclusion

After reconsidering the remaining arguments following remand from our Supreme Court's opinion in *Hwang II*, we affirm the trial court's order denying Defendant's motion to dismiss, insofar as Defendant's cross-appeal of this order is again before us. The University Defendants' portion of that order remains unaffected by the instant opinion.

We reverse the trial court's grant of summary judgment in favor of Defendant on Plaintiff's claims for slander per se and tortious interference with contract. We remand this matter to the trial court for further proceedings on those claims.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Judges ARROWOOD and GRIFFIN concur.

Report per Rule 30(e).